[Civ. No. 35998. First Dist., Div. Four. Oct. 8, 1975.]

FOX & CARSKADON FINANCIAL CORPORATION et al., Plaintiffs and Appellants, v.
SAN FRANCISCO FEDERAL SAVINGS AND LOAN ASSOCIATION, Defendant and Respondent.

**COUNSEL**

Brobeck, Phleger & Harrison, Howard N. Ellman and Susan J. Passovoy for Plaintiffs and Appellants.

Charles D. Sooy and C. Darrell Sooy for Defendant and Respondent.

**OPINION**

**CALDECOTT, P. J.**—This is an appeal from a summary judgment in favor of defendant-respondent San Francisco Federal Savings & Loan

Association (San Francisco Federal) and against plaintiffs-appellants Fox & Carskadon Financial Corporation and El Camino Real Associates.

Fox & Carskadon Financial Corporation entered into an agreement with one Hyman Weisel (not a party to this action) in which Weisel agreed to sell to El Camino Real Associates, a limited partnership to be formed by Fox & Carskadon, an apartment project to be constructed by Weisel. The total purchase price for the project was $2,375,000. Weisel applied to San Francisco Federal for a construction loan of $1,800,000. In June 1969, the directors' loan committee meeting of San Francisco Federal approved the loan. At the time the respondent approved the loan it knew of the agreement between Weisel and Fox & Carskadon. In making the loan, San Francisco Federal relied on information it possessed with regard to Weisel's financial condition from prior business dealings together.

In late December 1969, it became apparent to San Francisco Federal from information obtained from Weisel that he was experiencing financial difficulty and lack of cash to carry on his operations. In January 1970, Weisel notified San Francisco Federal, Fox and El Camino that he was preparing to file petitions to have himself and a number of his wholly owned corporations adjudicated bankrupt. Such petitions were filed in January 1970. San Francisco Federal proceeded to foreclose under its deed of trust and at the trustees' sale San Francisco Federal purchased the property for $1,700,000. At the time of the sale, the total loan demand, including principal, interest, foreclosure fees and costs was substantially in excess of $1,700,000. Thus, as a result of the sale, Fox and El Camino Real Associates lost their equity in the apartments.

Both parties agreed that the basic issue of law—whether San Francisco Federal owed any duty of care to Fox and El Camino in making the construction loan to Weisel—should be submitted for decision and determination based on the agreed statement of facts and relevant exhibits.[1]

■ In support of their contention that San Francisco Federal owed a duty of care, appellants rely on several cases. Upon examining them, we

[1]Although the complaint stated that San Francisco Federal made express representations concerning administration and disbursement of the loan, Fox & Carskadon concedes that it does not rely on such representations as a basis for any of its contentions.

find that they are all distinguishable from the case at hand. The first case relied on by Fox & Carskadon is *Connor v. Great Western Sav. & Loan Assn.*, 69 Cal.2d 850 [73 Cal.Rptr. 369, 447 P.2d 609, 39 A.L.R.3d 224]. In that case, plaintiffs, individual homeowners, purchased single family homes in a residential development. As the homes were erected on adobe soil, they suffered severe cracking when the earth expanded and contracted. The plaintiffs sued both the developer and construction lender for damages. The Supreme Court held the bank liable on grounds of negligence as it had become an "active participant in a home construction enterprise . . . beyond the domain of the usual money lender." (*Id.*, at p. 864.) In *Connor,* pledgees of promissory notes secured by second deeds of trust also sought to hold Great Western liable for the impairment to their security. The court rejected this contention by stating that "[t]he balance of the factors set forth in the *Biakanja* [2] case is significantly different when an investor in or pledgee of notes secured by second deeds of trust is substituted for a member of the home-buying public . . . ." (*Id.*, at p. 870.)

Appellants argue that their situation is analogous to the plaintiff homeowners in *Connor* "who were powerless to protect their equities from obliteration as a result of improper loan administration."

The argument is without merit. Fox & Carskadon is a "large public syndication," which has enjoyed a "reputation as an experienced and reputable real estate brokerage firm in the San Francisco Bay Area." Appellants have done prior business with developer Weisel on a project called Buckingham Apartments. Based on these facts, we find that appellants' position is synonymous to that of the cross-complainants in *Connor,* who, the Supreme Court stated, were able to protect themselves.

This position is supported by the fact that immediately after the *Connor* decision, the Legislature enacted Civil Code section 3434.[3] This

---

[2] *Biakanja v. Irving*, 49 Cal.2d 647 [320 P.2d 16, 65 A.L.R.2d 1358].

[3] Section 3434 states: "A lender who makes a loan of money, the proceeds of which are used or may be used by the borrower to finance the design, manufacture, construction, repair, modification or improvement of real or personal property for sale or lease to others, shall not be held liable to third persons for any loss or damage occasioned by any defect in the real or personal property so designed, manufactured, constructed, repaired, modified or improved or for any loss or damage resulting from the failure of the borrower to use due care in the design, manufacture, construction, repair, modification or improvement of such real or personal property, unless such loss or damage is a result of an act of the lender outside the scope of the activities of a lender of money or unless the lender has been a party to misrepresentations with respect to such real or personal property."

statute delineates when a construction lender may be held liable for the failure of the borrower.

Appellants argue that Civil Code section 3434 was to control a lender's liability for physical defects only. It is the intent of the statute as we read it to define when a duty of care is placed on a financial institution for failures on the part of borrowers. To grant plaintiffs relief on a negligence theory would be to expand lender liability beyond the Legislature's implied limit.

The second case relied on by appellants is *Middlebrook-Anderson Co. v. Southwest Sav. & Loan Assn.*, 18 Cal.App.3d 1023 [96 Cal.Rptr. 338]. In this case, the seller of real property subordinated his land sale contract to a construction loan by recording his contract after the loan. The seller only agreed to this subordination after the buyer stated that funds from the construction loan would only be used for construction. The lender had knowledge of the second trust deed taken by the seller, when the lender disbursed the construction loan into an account. The buyer used $300,000 of the loan for purposes other than construction. The loan ran out prior to completion of the project and the seller lost its security interest. The court found the lender liable for the seller's loss under a contract theory. In reaching this decision, it explicitly distinguished *Middlebrook* from another line of cases which rejected lender liability on traditional negligence grounds. We agree with the respondents that *Middlebrook-Anderson* is distinguishable from the present case which is an action for money damages based on a negligence theory while the plaintiffs in *Middlebrook* sought relief on contract theory by rescission of the subordination agreement which would result in plaintiffs regaining priority.

*Gluskin v. Atlantic Savings & Loan Assn.*, 32 Cal.App.3d 307 [108 Cal.Rptr. 318], is distinguishable in that there was a material modification in the loan to which the seller had subordinated his interest without the knowledge and consent of the seller. The court held that in such cases considerations of public policy require protection of subordinating seller's right.

Lastly, the appellants contend that in applying the *Biakanja* test to the record, Fox & Carskadon is a party to whom San Francisco Federal owed a duty of care. *Biakanja v. Irving, supra,* 49 Cal.2d 647, held that the determination of whether a defendant is liable to a third party involves the balancing of various factors: 1) the extent to which the transaction was intended to affect the plaintiff; 2) the foreseeability of

the harm to him; 3) the degree of certainty that the plaintiffs suffered injury; 4) the closeness of the connection between the defendant's conduct and the injury suffered; 5) the moral blame attached to defendant's conduct and the policy of preventing future harm.

In analyzing these factors to the present case, we again reach the conclusion that respondent did not owe appellants a duty of care.

(1) It is undisputed that defendant's participation in the project was limited to that of a conventional construction lender who had no interest in whether the property was sold or whether it made a profit. Similar activity by a lender in *Bradler* v. *Craig*, 274 Cal.App.2d 466 [79 Cal.Rptr. 401], was held so minimal and restricted as to have no effect on plaintiffs.

(2) The harm was not foreseeable to San Francisco Federal who alleges that it had done over $15 million of business with Weisel in the past and had experienced no difficulties.

(3) As to this factor respondent concedes that plaintiffs suffered injury.

(4) The connection between defendant's conduct and plaintiffs' injury is remote in that San Francisco Federal relied on an experienced developer in the construction business with whom they had previous successful dealings. The bank also had financial statements on Weisel from December 1968 on which they relied in making the June 1969 loan.

(5) There is no moral blame attached to defendant's actions as plaintiffs were in a position to protect themselves from such a loss. On the contrary, a strong public policy exists, if our financial institutions are to remain solvent, to prevent a conventional money lender from having to insure every business venture. This policy is particularly necessary in the construction lending business where risks are so great.

The judgment is affirmed.

Rattigan, J., and Keane, J.,* concurred.

A petition for a rehearing was denied November 4, 1975, and appellants' petition for a hearing by the Supreme Court was denied December 4, 1975.

*Assigned by the Chairman of the Judicial Council.