[No. C005999. Third Dist. June 27, 1991.]

HANS S. NYMARK, Plaintiff, Cross-defendant and Appellant, v. HEART FEDERAL SAVINGS & LOAN ASSOCIATION et al., Defendant, Cross-complainant and Respondent.

## COUNSEL

Carr, Kennedy, Peterson & Frost and Robert M. Harding for Plaintiff, Cross-defendant and Appellant.

McKenna, Conner & Cuneo, Mckenna & Cuneo, Martin H. Kresse, Linnie A. Freeman and Aaron M. Peck for Defendant, Cross-complainant and Respondent.

## OPINION

**SCOTLAND, J.**—Plaintiff, Hans S. Nymark, appeals from the judgment entered in favor of defendant, Heart Federal Savings & Loan Association, after the trial court granted defendant's motion for summary judgment in this action to recover damages allegedly resulting from defendant's negligence in appraising plaintiff's property in connection with his application for a loan from defendant to refinance the purchase money mortgage on the property. We agree with the trial court that a financial institution acting within the scope of its conventional activities as a lender of money owes no duty of care to a borrower in preparing an appraisal of the security for a loan when the purpose of the appraisal simply is to protect the lender by satisfying it that the collateral provides adequate security for the loan. Accordingly, we shall affirm the judgment.

### FACTS AND PROCEDURAL HISTORY

In 1981, plaintiff purchased a single family residence on five acres of land near Mt. Shasta. As part of the purchase agreement, he executed a promissory note in favor of the sellers in the principal sum of $129,000 secured by a deed of trust on the property.

Approximately two years later, plaintiff wanted to refinance the note and applied for a $100,000 loan from defendant. After defendant conducted an appraisal of plaintiff's property, the loan was approved. Plaintiff executed a promissory note in favor of defendant in the principal amount of $100,000, which was secured by a deed of trust on the property. The proceeds of the loan were used to pay the sellers the balance owed on the original note.

Plaintiff's cause of action against defendant centers on the appraisal. ██ ██ ██ ██ ██ ██ The complaint alleges that, as part of the loan transaction, defendant conducted the appraisal, which was paid for by plaintiff; the appraisal report represented that plaintiff's residence was of "A+ quality" and that the "roof, foundation, plumbing, mechanical, electrical all appear OK;" plaintiff relied upon these representations in agreeing to enter into the loan transaction; the representations were untrue; approximately four years after the appraisal was completed, an inspection performed by the County of Siskiyou revealed numerous construction defects and building code violations costing in excess of $50,000 to repair, resulting in the property being "red-tagged" as unsafe for habitation; defendant conducted its inspection of the premises in such a negligent manner that it failed to observe and disclose these defects; and "as a proximate result of defendant's breach of its fiduciary duty,[1] plaintiff has been required to vacate his home and obtain another residence for his family and incur legal expenses."[2] The complaint prayed for damages in an unspecified amount and for a preliminary and permanent injunction to enjoin defendant from foreclosing under its deed of trust.

Defendant answered and cross-complained for judicial foreclosure of its deed of trust and for indemnity against the person who prepared the appraisal in conjunction with defendant. With respect to the cause of action for judicial foreclosure, the cross-complaint alleges that plaintiff is in default on the promissory note, having failed to make any payments since May 1, 1987,

---

[1]To the extent this cryptic allegation may be construed as pleading a breach of fiduciary duty, it fails as a matter of law. The relationship between a lending institution and its borrower-client is not fiduciary in nature. (*Price* v. *Wells Fargo Bank* (1989) 213 Cal.App.3d 465, 476-478 [261 Cal.Rptr. 735].) A commercial lender is entitled to pursue its own economic interests in a loan transaction. (*Kruse* v. *Bank of America* (1988) 202 Cal.App.3d 38, 67 [248 Cal.Rptr. 217].) This right is inconsistent with the obligations of a fiduciary which require that the fiduciary knowingly agree to subordinate its interests to act on behalf of and for the benefit of another. (*Committee on Children's Television, Inc.* v. *General Foods Corp.* (1983) 35 Cal.3d 197, 221 [197 Cal.Rptr. 783, 673 P.2d 660].)

[2]Although plaintiff entitled his cause of action, "Breach of Contract, Injunction," he did not plead the elements essential to state such a claim. (See 4 Witkin, Cal. Procedure (3d ed. 1985) Pleading, §§ 464-489, pp. 504-524.) The nature of a cause of action is determined by the allegations set forth therein, not by the title ascribed to it by the pleader. (*Id.*, at § 404, p. 454.) Here, the allegations sound in negligence and, despite the title given to this cause of action, plaintiff characterizes it as one for negligence. It has not been argued either in the trial court or on appeal that the complaint is for breach of contract.

and that "[a]s of May 1, 1988, the total of monthly payments thus defaulted by [plaintiff] is $11,599.24." The cross-complaint further alleges that defendant has elected, pursuant to the default provisions of its note, to declare the whole sum of principal and interest immediately due and payable. Defendant sought a deficiency judgment against plaintiff.

Defendant moved for summary judgment on its cross-complaint for judicial foreclosure. Plaintiff opposed the motion, asserting that his claims against defendant operate as a setoff against the indebtedness owed under the note, and arguing that triable issues of fact exist with respect to his entitlement to this setoff—i.e., whether defendant was negligent, and whether this resulted in damage to plaintiff. The trial court granted defendant's motion, finding that "no cause of action may be stated against defendant . . . [because] [n]o duty existed as between defendant Heart and plaintiff regarding the appraisal for loan purposes."

Judgment was entered in favor of defendant on both the complaint and the cross-complaint for judicial foreclosure. The judgment accorded defendant the right to recover a deficiency judgment against plaintiff in the event the proceeds from the foreclosure sale are insufficient to satisfy the indebtedness owed to it by plaintiff. The foreclosure proceedings were stayed by the trial court pending this appeal.

## DISCUSSION

### I

■ "Summary judgment is properly granted only when the evidence in support of the moving party establishes that there is no issue of fact to be tried" and the moving party is entitled to judgment as a matter of law. (*Lipson* v. *Superior Court* (1982) 31 Cal.3d 362, 374 [182 Cal.Rptr. 629, 644 P.2d 822]; Code Civ. Proc., § 437c, subd. (c).) Here, defendant does not occupy the typical position of a defendant moving for summary judgment.[3]
■ By seeking summary judgment on its cross-complaint, defendant is in a position analogous to that of a plaintiff moving for summary judgment. Accordingly, in order to prevail, defendant must establish each element entitling it to judicial foreclosure and disprove all affirmative defenses asserted by plaintiff (cross-defendant), demonstrating the absence of any material issues of fact which would necessitate trial of the matter. (*Hayward*

---

[3]Generally, when the defendant is the moving party, it must conclusively negate a necessary element of each cause of action alleged by the plaintiff or prove an affirmative defense that would bar every cause of action, demonstrating that under no hypothesis is there a material issue of fact that requires the process of a trial. (*Molko* v. *Holy Spirit Assn.* (1988) 46 Cal.3d 1092, 1107 [252 Cal.Rptr. 122, 762 P.2d 46]; *DeRosa* v. *Transamerica Title Ins. Co.* (1989) 213 Cal.App.3d 1390, 1395 [262 Cal.Rptr. 370].)

*Union etc. School Dist.* v. *Madrid* (1965) 234 Cal.App.2d 100, 120 [44 Cal.Rptr. 268].)

█ As previously noted, plaintiff argued setoff as a defense to the judicial foreclosure action. He contended that the claims alleged in his complaint operate as a setoff against the amount he owed to defendant under the promissory note and thus constitute a defense to the foreclosure action because "the damages proximately caused by [defendant] . . . could possibly exceed the balance of [plaintiff's] indebtedness under the promissory note." █ Setoff is an appropriate defense to a foreclosure action under a deed of trust. (*Hauger* v. *Gates* (1954) 42 Cal.2d 752, 754-755 [269 P.2d 609]; Note, *Procedure: Cross Demands: Automatic Setoff* (1954) 42 Cal.L.Rev. 897, 901-902.) The basis for this defense is Code of Civil Procedure section 431.70, which provides that cross-demands for money between two persons may be setoff against each other and considered paid to the extent they balance in amount.[4] (*American Nat. Bank* v. *Stanfill* (1988) 205 Cal.App.3d 1089, 1097 [252 Cal.Rptr. 861]; *Hauger, supra,* at p. 755.)

█ It was defendant's burden as the moving party in the summary judgment motion to disprove this defense. (*Hayward Union etc. School District* v. *Madrid, supra,* 234 Cal.App.2d at p. 120.) To do so, defendant had to negate an essential element of plaintiff's negligence claim which served as the basis for the setoff defense. (*Ibid.*) Defendant argued that plaintiff has no setoff against the indebtedness under the promissory note because his complaint fails to state a cause of action for negligence in that two essential elements are absent: a duty of care owed by defendant to plaintiff, and damages sustained by plaintiff as a result of defendant's alleged negligence.

## II

█ The existence of a duty of care owed by a defendant to a plaintiff is a prerequisite to establishing a claim for negligence. (*Beauchamp* v. *Los Gatos Golf Course* (1969) 273 Cal.App.2d 20, 32 [77 Cal.Rptr. 914].) "Whether a legal duty exists in a given case is primarily a question of law." (*Wylie* v. *Gresch* (1987) 191 Cal.App.3d 412, 416 [236 Cal.Rptr. 552].) To the extent it presents solely an issue of law, the question of whether a duty exists may be resolved on a motion for summary judgment. (See *Jones-Hamilton Co.* v. *Franchise Tax Bd.* (1968) 268 Cal.App.2d 343, 347 [73 Cal.Rptr. 896].)

█ The parties have not identified, nor have we found, any California case specifically addressing whether a lender has a duty of care to a

---

[4]Code of Civil Procedure section 431.70 states in pertinent part: "Where cross-demands for money have existed between persons at any point in time . . . , and an action is thereafter commenced by one such person, the other person may assert in the answer the defense of payment in that the two demands are compensated so far as they equal each other . . . ."

borrower in appraising the borrower's collateral to determine if it is adequate security for a loan.[5] However, as a general rule, a financial institution owes no duty of care to a borrower when the institution's involvement in the loan transaction does not exceed the scope of its conventional role as a mere lender of money. (*Wagner* v. *Benson* (1980) 101 Cal.App.3d 27, 34-35 [161 Cal.Rptr. 516]; *Fox & Carskadon Financial Corp.* v. *San Francisco Fed. Sav. & Loan Assn.* (1975) 52 Cal.App.3d 484, 488, 489 [125 Cal.Rptr. 549]; *Bradler* v. *Craig* (1969) 274 Cal.App.2d 466, 473, 476 [79 Cal.Rptr. 401].) Thus, for example, a lender has no duty to disclose its knowledge that the borrower's intended use of the loan proceeds represents an unsafe investment. (*Wagner* v. *Benson, supra,* 101 Cal.App.3d at pp. 33-35.) "The success of the [borrower's] investment is not a benefit of the loan agreement which the [lender] is under a duty to protect [citation]." (*Id.,* at p. 34.)[6] "Liability to a borrower for negligence arises only when the lender 'actively participates' in the financed enterprise 'beyond the domain of the usual money lender.' " (*Id.,* at p. 35; quoting *Connor* v. *Great Western Sav. & Loan Assn.* (1968) 69 Cal.2d 850, 864 [73 Cal.Rptr. 369, 447 P.2d 609, 39 A.L.R.3d 224].)

 Here, defendant performed the appraisal of plaintiff's property in the usual course and scope of its loan processing procedures to protect *defendant's* interest by satisfying it that the property provided adequate security for the loan. The complaint does not allege, nor does anything in the summary judgment papers indicate, that the appraisal was intended to induce

---

[5]The case closest in similarity is *Gay* v. *Broder* (1980) 109 Cal.App.3d 66 [167 Cal.Rptr. 123]. In *Gay,* an appraiser designated by the Veterans Administration (VA) to appraise property which was the subject of a veteran's application for a VA guaranteed loan negligently *undervalued* the property. As a result, the veteran was unable to obtain a VA loan and had to get conventional financing at a greater cost. He sued the appraiser for negligence. After the appraiser's demurrer was sustained, a judgment of dismissal was entered. The appellate court affirmed, holding that the appraiser did not owe a duty of care to the veteran who applied for the loan. It reasoned: Under federal law, the VA has a statutory duty to appraise property which is the subject of a VA loan application and may designate an appraiser for that purpose. The statute is designed to protect the federal government from having to assume the responsibility of a guarantor because of inadequate security. (*Id.,* at pp. 69-74.) Since the statute is intended to protect the VA and not the loan applicant, the appraiser's duty of care extended only to the VA. Otherwise, "[c]oncern with the possibility of claims against him for refusing to set a value as high as the loan desired by the applicant veteran would deter the appraiser from reporting to the administration his true opinion as to value and tend to cause him to breach his duty to the federal government. The policy considerations against the imposition of liability in the instant case are manifest." (*Id.,* at p. 75.)

[6]Similarly, a financial institution engaged in its conventional role as a lender of money is not liable to a third party for any financial failure of that which is financed (*Fox & Carskadon Financial Corp.* v. *San Francisco Fed. Sav. & Loan Assn., supra,* 52 Cal.App.3d at pp. 486-489), or for any loss or damage due to a defect in, or resulting from the failure of the borrower to use due care in, the design, manufacture, construction, repair, modification or improvement of real or personal property, which design, etcetera was financed by a loan from the institution. (Civ. Code, § 3434.)

plaintiff to enter into the loan transaction or to assure him that his collateral was sound. Accordingly, in preparing the appraisal, defendant was acting in its conventional role as a lender of money to ascertain the sufficiency of the collateral as security for the loan. "Normal supervision of the enterprise by the lender for the protection of its security interest in loan collateral is not 'active participation' [in the financed enterprise beyond that of the ordinary role of a lender in a loan transaction]." (*Wagner* v. *Benson, supra,* 101 Cal.App.3d at p. 35.) Thus, we must conclude that defendant owed no duty of care to plaintiff in the preparation of the property appraisal.

Our conclusion is consistent with that of the Supreme Court of Vermont. In *Hughes* v. *Holt* (1981) 140 Vt. 38 [435 A.2d 687], the plaintiffs purchased a house which turned out to be termite infested. While a contractor was attempting to correct the problem, the house collapsed. The plaintiffs sued, among others, the bank which financed the purchase and its appraiser who, in setting the value of the property, overlooked the termite damage. The complaint alleged that the bank was negligent in estimating the residence's value for mortgage purposes and that plaintiffs relied on the appraisal to their detriment in purchasing the house. However, the confidential appraisal report was for the exclusive use of the bank and was not intended to operate as a representation to the buyers regarding the quality of the home to be purchased. The Vermont court held the defendant bank was not liable for damages incurred by its borrower-client as a result of the defendant's negligence in appraising the client's property. (*Id.,* at pp. 688-689.) The court reasoned that this was *not* a case "where a bank goes beyond its role as mortgagee and gets involved in a capacity beyond that of a mere lending agency so that a duty relationship analogous to that of a seller or broker may come into being . . . ." (*Id.,* at p. 688.)

We note the Supreme Court of Iowa has reached a contrary result. In *Larsen* v. *United Fed. Sav. & Loan Ass'n* (Iowa 1981) 300 N.W.2d 281 [21 A.L.R.4th 855], the plaintiffs signed an offer to buy a home for $45,000 contingent upon their securing "conventional financing." As part of the loan process, the house was appraised by an employee of the defendant lending institution. He valued the house at $45,000, and the realtor informed plaintiffs "the appraisal 'was okay and there was nothing wrong.' " Plaintiffs relied on the appraisal in purchasing the property. When they moved in, plaintiffs discovered major structural defects requiring up to $19,000 to correct. They sued the lender, alleging it negligently supplied misinformation about the condition of the home, which induced them to complete the purchase. The Iowa court concluded the lender was liable because it owed a duty to its borrower-clients to use reasonable care in appraising the property. (*Id.,* at pp. 284-288.) The court explained: "[I]n determining whether a duty exists in this case, the key inquiry is whether [the lender] knew or should

have foreseen that [the borrowers] would rely on its appraisal." (*Id.*, at p. 286.) The court rejected the lender's argument that the appraisal was "for its own purpose and protection, 'solely to justify its investment in the subject property.' " (*Ibid.*) The court reasoned: "Even though the appraisal might be made primarily for the benefit of the lending institution, the appraiser should also reasonably expect the home purchaser, who pays for the appraisal and to whom the results are reported (and who has access to the written report on request), will rely on the appraisal to reaffirm his or her belief the home is worth the price he or she offered for it. The purchaser of the home should be among those entitled to rely on the accuracy of the report and therefore should be entitled to sue for damages resulting from a negligent appraisal. [¶] . . . [The lender] had every reason to know its appraisal would influence this home purchase, which encompassed the loan transaction. It is not unreasonable to hold [the lender] to a duty of care to the [borrowers], an obvious party to that transaction." (*Id.*, at p. 287; accord *Costa* v. *Neimon* (1985) 123 Wis.2d 410 [366 N.W.2d 896].)

We reject the Iowa analysis because it focuses upon the foreseeability of reliance by the borrower.[7] ■ In California, the test for determining whether a financial institution owes a duty of care to a borrower-client " 'involves the balancing of various factors, among which are [1] the extent to which the transaction was intended to affect the plaintiff, [2] the foreseeability of harm to him, [3] the degree of certainty that the plaintiff suffered injury, [4] the closeness of the connection between the defendant's conduct and the injury suffered, [5] the moral blame attached to the defendant's conduct, and [6] the policy of preventing future harm.' " (*Connor* v. *Great Western Sav. & Loan Assn.* (1968) 69 Cal.2d 850, 865 [73 Cal.Rptr. 369, 447 P.2d 609, 39 A.L.R.3d 224], quoting *Biakanja* v. *Irving* (1958) 49 Cal.2d 647, 650 [320 P.2d 16]; *Fox & Carskadon Financial Corp.* v. *San Francisco Fed. Sav. & Loan Assn., supra,* 52 Cal.App.3d at pp. 488-489; cf. *Gay* v. *Broder, supra,* 109 Cal.App.3d at pp. 73-74.)

---

[7]The Iowa analysis in *Larsen* and the Wisconsin holding in *Costa* are founded on the theory of negligent misrepresentation set forth in Restatement Second of Torts section 522. This section provides in pertinent part: "(1) One who, in the course of his business, profession or employment, . . . supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information." Subsection 2 provides that liability is limited to loss suffered (a) by the person or one of the limited group of persons "for whose benefit and guidance" the information was supplied, and (b) through reliance thereon by the person or persons the information was intended to "influence."

This theory of negligent misrepresentation is inapplicable here because plaintiff did not allege that the appraisal prepared by defendant's agent was intended for plaintiff's benefit and guidance or to influence him in the loan transaction. Rather, plaintiff effectively conceded that the appraisal was undertaken simply to protect *defendant's* interest in the transaction.

Application of these factors to the circumstances here supports our conclusion that defendant did not owe a duty of care to plaintiff in preparing the appraisal.

(1) As previously noted, the purpose of the appraisal was to protect *defendant's* interest by satisfying it that plaintiff's property provided adequate security for the loan. Plaintiff did not allege that the appraisal was intended to assure him that his collateral was sound or to induce him to enter into the loan transaction. Thus, the appraisal was not intended to affect plaintiff in a manner dictating the existence of a duty of care in its preparation.

(2) While it was foreseeable the appraisal might be considered by plaintiff in completing the loan transaction, the foreseeability of harm was remote. Plaintiff was in as good a position as, if not better position than, defendant to know the value and condition of the property. One who seeks financing to purchase real property has many means available to assess the property's value and condition, including comparable sales, advice from a realtor, independent appraisal, contractors' inspections, personal observation and opinion, and the like. Here, plaintiff already had purchased the house and had lived in it for two years, apparently without complaint, before applying to defendant for a refinancing loan. We believe it is not reasonably foreseeable that a borrower will be influenced to his or her detriment by an appraisal prepared by the lender for its own benefit because the borrower is in a position in which he or she knows or should know the value and condition of the property independent of the appraisal made for the lender's protection. Stated another way, the borrower should be expected to know that the appraisal is intended for the lender's benefit to assist it in determining whether to make the loan, and not for the purpose of ensuring that the borrower has made a good bargain, i.e., not to insure the success of the investment. (Cf. *Wagner* v. *Benson, supra,* 101 Cal.App.3d at p. 34.)

(3) We will assume for the purpose of this analysis that plaintiff suffered injury.

(4) As discussed above, the connection between defendant's conduct and the injury suffered is tenuous because the appraisal was intended for the lender's benefit, not to assure the borrower that his collateral was sound.

(5) There is no moral blame because plaintiff was in a position to protect himself from loss. (*Fox & Carskadon Financial Corp.* v. *San Francisco Fed. Sav. & Loan Assn., supra,* 52 Cal.App.3d at p. 489.)

(6) "[A] strong public policy exists, if our financial institutions are to remain solvent, to prevent a conventional money lender from having to insure [the success of every investment]." (*Fox & Carskadon Financial*

*Corp.* v. *San Francisco Fed. Sav. & Loan Assn., supra,* 52 Cal.App.3d at p. 489; cf. *Kinner* v. *World Sav. & Loan Assn.* (1976) 57 Cal.App.3d 724, 728-734 [129 Cal.Rptr. 400].) Imposition on a lender of a duty of care in the preparation of an appraisal done solely for the lender's benefit "would drastically alter the risk undertaken by the [lender] in the loan agreement." (*Wagner* v. *Benson, supra,* 101 Cal.App.3d at p. 34.) Moreover, creation of such a duty would adversely affect consumers, particularly those seeking to acquire affordable housing. A lender which currently obtains a cursory appraisal at minimal cost to the borrower in order to satisfy itself that the collateral provides adequate security for the loan would be compelled by the threat of negligent appraisal liability to undertake a comprehensive examination of the collateral. The added cost of such a detailed appraisal undoubtedly would be passed on to the borrower. For housing loans, this consequence would be contrary to the public interest in reducing the cost of acquiring housing. (See, e.g., Health & Saf. Code, §§ 52535, 52580.)

For the reasons stated above, defendant, acting in its conventional role as a lender of money, owed no duty of care to plaintiff in preparing the appraisal of his collateral. A contrary conclusion would produce the incongruous result that a lender which conducts an appraisal *for its own benefit* could become responsible for guaranteeing to the borrower the adequacy and soundness of the collateral the borrower has pledged as security for the loan. Such a nonsensical result is not compelled by the law. (Cf. *Gay* v. *Broder, supra,* 109 Cal.App.3d at pp. 74-75; *Kinner* v. *World Sav. & Loan Assn., supra,* 57 Cal.App.3d at pp. 729-734.)[8]

### DISPOSITION

The judgment is affirmed.

Sim, Acting P. J., and Nicholson, J., concurred.

---

[8]We requested and received supplemental briefing on an issue relating to whether the damages claimed by plaintiff were the proximate result of defendant's alleged negligence. In light of our holding that plaintiff's claim fails due to the absence of a duty of care by defendant, it is unnecessary to address the damages element of this cause of action.