5 F.3d 536
NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
 HAVASU CONDO'S, LTD., a California General Partnership;
Jack Maurer, Louis C. Ferrante, and William
Harrison, General Partners, Plaintiffs-Appellants,
v.
SECURITY PACIFIC CORPORATION, A Delaware Corporation;
Security Pacific Financial Services, Inc., A
Delaware Corporation, Defendants-Appellees.
HAVASU CONDO'S, LTD., a California General Partnership;
Jack Maurer, Louis Ferrante, and William Harrison,
General Partners, Plaintiffs-Appellees,
v.
SECURITY PACIFIC CORPORATION, A Delaware Corporation;
Security Pacific Financial Services, Inc., A
Delaware Corporation, Defendants-Appellants.
 Nos. 92-55921, 92-56421.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Aug. 5, 1993.
Decided Aug. 17, 1993.
 
 Appeal from the United States District Court for the Southern District of California, No. CV-87-0609-R; M.D. Crocker, District Judge, Presiding.
 Appeal from the United States District Court for the Southern District of California, No. CV-87-0609-H; Marilyn L. Huff, District Judge, Presiding.
 S.D.Cal.
 AFFIRMED IN PART AND REVERSED AND REMANDED IN PART.
 Before: NOONAN, FERNANDEZ, and KLEINFELD, Circuit Judges
 MEMORANDUM*
 Plaintiffs Charles Daff, Jack Mauer, Louis Ferrante and William Harrison (collectively Havasu) appeal from an order of the district court which granted summary judgment to defendants Security Pacific Corporation and Security Pacific Finance Corporation (collectively SPFC) on certain claims. Other claims were disposed of by judgment on the pleadings and judgment as a matter of law, from which plaintiffs also appeal. SPFC appeals from denial of its motion to assess attorneys' fees against plaintiffs. We affirm the judgment for SPFC. We reverse the denial of attorney's fees.
 FACTS
 Havasu conceived of an idea to build, market and manage a time-share development at Lake Havasu, Arizona. Havasu purchased three adjacent parcels of land at Lake Havasu and began to plan the development in the early 1980's. Having no previous experience in the time-share industry, Havasu conducted feasibility studies and met with several experienced time-share marketers. Included among those marketers was Kevin Alme. Havasu learned that start-up marketing expenses for a time-share project average around $200,000. Several experienced marketing firms were willing to fund those start-up expenses in exchange for 50% of the gross sales receipts.
 Havasu came in contact with Gordon Pollock, a time-share furniture supplier, who also became involved in the Lake Havasu project. Pollock introduced Havasu to Patty Andretta, a mortgage broker, who in turn shopped the loan with SPFC. After a trip to Lake Havasu by Ferrante, Pollock, Andretta, and Mark Mashouri, a loan officer with SPFC, Mashouri expressed interest in the project on the part of SPFC and indicated the possibility of a "tandem" loan to finance both construction and receivables.
 SPFC was concerned that none of the primary participants in the Lake Havasu project had any experience in the time-share industry. Kevin Alme had previously sent a resume to SPFC at the direction of Harrison, one of Havasu's partners. In a conversation with Pollock, Mashouri stated that the loan would only be closed if Alme was made the marketer and a 25% partner. Pollock relayed this information to the partners who also confirmed it with Mashouri. Having no other financing alternatives, Maurer, Harrison, Ferrante and Alme signed a partnership agreement creating Havasu Condos Ltd.
 Havasu provided Alme with somewhere between $39,000 and $50,000 for the start-up marketing expenses. The construction loan with SPFC closed with Maurer, Harrison, Ferrante and Alme as personal guarantors. Building at Lake Havasu proceeded. Havasu became dissatisfied with Alme's marketing efforts and his spending practices. He was infrequently present at the sales office and, when confronted about his transfer of $39,000 to his office in Austin, left the project entirely. His sales efforts had not been productive. Shortly after Alme's departure, the partnership entered bankruptcy.
 PROCEEDINGS
 Havasu sued SPFC, alleging causes of action for fraud, breach of contract, breach of the covenant of good faith and fair dealing, breach of fiduciary obligations, negligence, intentional infliction of emotional distress and RICO violations.
 Following discovery, SPFC moved for summary judgment. After conducting a hearing and reviewing the evidence, Magistrate Gonzalez recommended that summary judgment be granted on all but the breach of contract, breach of the covenant of good faith and fair dealing, breach of fiduciary duty and negligence claims. The report suggested that those claims should survive only to the extent that they were based upon the allegations concerning Alme's job and marketing efforts. Judge Rhoades adopted the recommendation of Magistrate Gonzalez.
 Trial on the remaining issues was held before Judge Crocker. SPFC moved for judgment on the pleadings on the breach of fiduciary duty claim, which was granted. After Havasu presented all of its evidence, SPFC made a motion for judgment as a matter of law on the remaining claims. Judge Crocker found that "[t]he only thing that [SPFC] did, according to the testimony, is approve [Alme] after [Havasu] selected him, [SPFC] didn't select him, [Havasu] did." The motion was granted and final judgment was entered in SPFC's favor. The deficiency cross-claim was tried to the jury at the same time and resulted in a verdict for Havasu. Havasu filed a timely notice of appeal of the final judgment.
 Based upon a provision in the loan contract which allowed the prevailing party to recover reasonable attorneys' fees and costs, SPFC filed a Bill of Costs with the clerk's office requesting costs and attorneys' fees. The clerk awarded only some of SPFC's statutory costs and rejected the remainder of the request. SPFC then filed a motion to re-tax costs and attorneys' fees with the court. Finding that the "action sounded primarily in tort," Judge Marilyn Huff denied the motion without oral argument. SPFC filed a timely notice of appeal.
 ANALYSIS
 I. HAVASU'S FRAUD CLAIMS
 Havasu's complaint alleged that SPFC made misrepresentations concerning its experience with time-share loans, the benefits of the tandem loan concept, and the experience and capability of Alme as a time-share marketer. Agreeing with Magistrate Gonzalez's assessment that SPFC's statements were "either true, in compliance with the loan agreements or not reasonably relied upon and [Havasu has] offered no evidence or facts to support [the fraud] claims," Judge Rhoades granted SPFC summary judgment on the fraud causes of action. The grant of summary judgment is reviewed de novo. T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 629 (9th Cir.1987).
 A common law fraud action requires proof of (1) a false representation, (2) knowledge by the defendant of its falsity, (3) intent by the defendant to deceive the plaintiff, (4) justifiable reliance by the plaintiff on the misrepresentation, and (5) damage caused by the reasonable reliance. Globe Int'l, Inc. v. Superior Court, 9 Cal.App.4th 393, 399 (1992). Havasu has come forth with no evidence that the representation concerning SPFC's experience in the time-share industry and the viability of the tandem loan concept were false. It was Havasu's burden to do so in order to survive summary judgment. See Celotex v. Catrett, 477 U.S. 317, 324 (1986). Havasu conducted its own investigation into Alme's marketing business and concluded that he was qualified. Havasu did not justifiably rely upon any representations by SPFC regarding Alme's experience and abilities. The district court properly granted SPFC summary judgment on the fraud claims.
 II. HAVASU'S CLAIMS BASED UPON THE ALLEGATION THAT SPFC REQUIRED PLAINTIFFS TO EMPLOY ALME AND MAKE HIM A PARTNER IN THE PROJECT.
 Havasu has appealed the judgment as a matter of law which was entered on its breach of contract, breach of the covenant of good faith and fair dealing, and negligence. Havasu also appeals the breach of fiduciary duty claim which was based on the same facts and as to which the district court entered judgment on the pleadings. The standard of review for the district court's action on all of these claims is de novo. Oscar v. University Students Co-operative Ass'n, 965 F.2d 783, 785 (9th Cir.), cert. denied, 113 S.Ct. 655 (1992); In re Hawaii Federal Asbestos Cases, 960 F.2d 806, 816 (9th Cir.1992). Judgment on the pleadings is appropriate only where "it appears beyond doubt that plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Buckey v. Los Angeles, 968 F.2d 791, 794 (9th Cir.), certs. denied, 113 S.Ct. 599, 113 S.Ct. 600 (1992). Judgment as a matter of law is proper where the evidence permits only one reasonable conclusion. Fed.R.Civ.P. 50(a); McGonigle v. Combs, 968 F.2d 810, 816 (9th Cir.), cert. dismissed sub nom, Casares v. Spendthrift Farm, Inc., 113 S.Ct. 399 (1992).
 A. THE BREACH OF FIDUCIARY DUTY CLAIM
 As a general rule the California courts have recognized that the relationship between a creditor and its debtor is arm's-length, encompassing no special duties. Nymark v. Heart Fed. Sav. & Loan Ass'n, 231 Cal.App.3d 1089, 1093 n. 1 (1991); Price v. Wells Fargo Bank, 213 Cal.App.3d 465, 476 (1989). Havasu has not brought forth any evidence which would indicate the existence of a special relationship with SPFC. The district court correctly granted judgment on the pleadings to SPFC on Havasu's breach of fiduciary duty cause of action.
 B. THE BREACH OF CONTRACT AND BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING CLAIMS.
 Havasu concedes that it can point to no particular provision of the lending contract which SPFC has broken. Instead, it argues that the breach of contract claim is based upon the implied covenant of good faith and fair dealing. Havasu correctly states that the covenant of good faith and fair dealing is implied into every contract and prohibits each party from "do[ing] anything which injures the right of the other party to receive the benefits of the agreement." Wagner v. Benson, 101 Cal.App.3d 27, 33 (1980). Havasu claims that SPFC breached this implied covenant when it required that Alme be made a partner and the marketer of the time-share project.
 The requirement that Alme be made a partner and the marketer of the project was imposed prior to the existence of a contract between Havasu and SPFC. The letter of intent, the commitment letter and the lending contract all assume the existence of a partnership between Maurer, Harrison, Ferrante and Alme. Havasu makes no allegations of conduct by SPFC relating to Alme which occurred after the parties entered into a contract together. There can be no duty to act fairly and in good faith prior to the existence of a contract. Racine & Laramie, Ltd. v. California Dept. of Parks & Recreation, 11 Cal.App.4th 1026, 1032 (1992). Because Havasu can point to no other provision in the financing contract which SPFC arguably breached, the district court properly awarded SPFC judgment as a matter of law on Havasu's contract claims.
 C. THE NEGLIGENCE CLAIM
 A viable negligence claim presupposes the existence of a duty running from the defendant to the plaintiff. Nymark, 231 Cal.App.3d at 1095. In an ordinary lending relationship, a financial institution owes no particular duty to its borrower. Liability for negligence can only be imposed where the lender has actively participated in the enterprise which is the subject of the lending transaction. Id. Customary supervision of the borrowing enterprise for the purpose of protecting the lender's security interest is not "active participation." Havasu has shown no more than customary supervision by SPFC. Id. at 1097 (quoting Wagner, 101 Cal.App.3d at 35).
 III. EVIDENCE OF BRIBES
 Havasu makes no allegation that a bribe was solicited or paid with regard to the requirement that Alme be made a partner and marketer of the project. The only issue remaining to be tried at trial was SPFC's possible liability for its role in the selection of Alme as the marketer. The alleged bribes had no relevance to this sole remaining issue. The district court did not abuse its discretion in excluding the evidence for lack of relevance.
 IV. SPFC'S MOTION TO RE-TAX COSTS AND ATTORNEYS' FEESThe loan agreement in this case contained a broad clause allowing for the recovery of attorneys' fees:
 In the event litigation or any other type of proceeding is commenced to enforce or interpret this Agreement, to recover damages for breach of this Agreement, to obtain declaratory relief in connection with this Agreement, or otherwise to obtain judicial relief in connection with the transactions which are the subject of this Agreement, the prevailing party shall be entitled to recover reasonable attorneys' fees ... and all costs of that litigation or proceeding, as the case may be, including, but not limited to, taxable and non-taxable costs....
 State law governed the great bulk of claims brought by Havasu against SPFC and controlled all of those claims which survived to trial. State law therefore dictates the recoverability of attorneys' fees. In re Ashley, 903 F.2d 599, 605 n. 7 (9th Cir.1990). California law recognizes the enforceability of contractual attorneys' fees provisions in two separate statutes, Cal.Civ.Code Sec. 1717 and Cal.Civ.Proc.Code Sec. 1021.
 The district court denied SPFC's motion for costs and attorneys' fees on the basis that Havasu's suit sounded primarily in tort. Section 1021 states that "[e]xcept as attorneys' fees are specifically provided for by statute, the measure and mode of compensation of attorneys and counselors at law is left to the agreement, express or implied, of the parties." The courts have interpreted this provision to encompass the right of the parties to agree to the allocation of costs and fees even where the suit is not based on contract. Lerner v. Ward, 13 Cal.App.4th 155, 160 (1993); see also 3250 Wilshire Blvd. Bldg. v. W.R. Grace & Co., 990 F.2d 487, 489 (9th Cir.1993). While section 1717 permits recovery of costs and fees only on claims for breach of contract, section 1717 does not limit the right of a party to recover costs and fees under Sec. 1021. Xuereb v. Marcos & Millichap, 3 Cal.App.4th 1338, 1341-42 (1992). In Lerner the appellate court held that the defendants should have been awarded attorneys' fees under their contract and Sec. 1021 though the only contract claims contained in the complaint were dropped prior to trial. Id. The attorneys' fees provision in the Lender contract allowed for the recovery of costs and fees "[i]n any action or proceeding arising out of the agreement." Id. at 155. The attorneys' fees clause in the contract between Havasu and SPFC is as broad as that in Lerner. The district court abused its discretion in refusing to award SPFC attorneys' fees and additional costs pursuant to Cal.Civ.Proc.Code Sec. 1021. See Bussey v. Affleck, 225 Cal.App.3d 1162, 1166 (1990).
 SPFC requested $214,828.92 in attorneys' fees and $31,500.71 in nonstatutory costs. This issue is returned to the district court to determine the reasonableness of the request as well as to determine SPFC's reasonable fees and costs on this appeal.
 The district court's judgment as to the merits of the claims brought by Havasu against SPFC is AFFIRMED. The district court's denial of SPFC's motion for assessment of costs and attorneys' fees is REVERSED and REMANDED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Cir.R. 36-3