Filed 5/20/25  Norris v. 1st Lending Solutions CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| LYNDA NORRIS,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>1ST LENDING SOLUTIONS, INC.,<br>et al.,<br><br>    Defendants and Respondents. | D085017<br><br><br><br>(Super. Ct. No. CVSW2301688) |

APPEAL from a judgment of the Superior Court of Riverside County, Raquel A. Marquez, Judge.  Affirmed.

Law Office of Robert V. Richter and Robert V. Richter for Plaintiff and Appellant.

Raymond N. Haynes for Defendants and Respondents.

Lynda Norris agreed to sell her home for $400,000.  The buyers retained a mortgage broker, 1st Lending Solutions, Inc. (doing business as First Lending), to connect them with a lender, Michigan Mutual, Inc. (MiMutual).  In processing the buyers' home loan, MiMutual had the property appraised and the estimated value was about $550,000.  MiMutual approved the loan, escrow closed, and the transaction was complete.  At some point, Norris learned of MiMutual's independent appraisal.  She sued First Lending, its Chief Executive Officer, and MiMutual, contending they were liable for financial elder abuse within the meaning of the Elder Abuse and Dependent Adult Protection Act (Welf. & Inst. Code,[1] § 15600 et seq.) because they did not advise her that she might be selling her home for less than it was worth.

But these defendants had no relationship with Norris, the property *seller*.  They were assisting the *buyers* in purchasing the property, and they had no obligation nor any reason to share any information with Norris.  Accordingly, we affirm the trial court's grant of summary judgment in favor of defendants.

## FACTUAL AND PROCEDURAL BACKGROUND

Norris moved into the home in 1996 with her husband and two children.  After losing her husband to cancer in 2015, and then going through the COVID-19 pandemic, Norris decided to move to Nevada to be closer to her adult children.  By this time, Norris was in her seventies.

According to Norris, on March 29, 2021, she called her longtime friend and neighbor, Penny Sargent, seeking a recommendation for a realtor to help

---

[1]     Further undesignated statutory references are to the Welfare and Institutions Code.

her sell her home.  Sargent—a realtor herself who lived two doors down from Norris—immediately walked over and offered to help Norris personally. Sargent advised Norris that her home was worth about $400,000 as it needed significant repairs.  She also said that she had a potential buyer, but Norris "would have to act fast to not lose this opportunity."  Norris trusted Sargent and agreed to sell the home at that price.

One or two days later, Norris signed a real estate purchase contract, agreeing to sell the home to the buyers Sargent had identified for $400,000. Sometime in the following two months, Norris hired an appraiser who reported in June 2021 that her home was worth approximately $619,000.

Meanwhile, the buyers retained mortgage broker First Lending to arrange their financing.  First Lending secured MiMutual to provide the home loan.  During the underwriting process, MiMutual obtained an independent appraisal of the property, which reported an estimated value of $550,000.  The appraisal report noted some "deferred maintenance" issues, such as dry rot, peeling paint, possible mold on the stucco, and neglected landscaping.  At least some of these issues were remediated prior to closing. MiMutual ultimately approved the loan for $392,755.

Escrow closed and a deed of trust was recorded on July 8, 2021.

In a First Amended Complaint, Norris alleged that everyone involved in the transaction knew she was selling her property for less than it was worth, and they were all culpable in taking equity from her.  She sued the buyers and Sargent, as well as several other individuals and entities involved in the transaction, including First Lending, its Chief Executive Officer, Alan

Vogan, and MiMutual (the latter three defendants are collectively referred to as the Lending Defendants).[2]

Norris initially asserted four causes of action as to all defendants: (1) negligence; (2) conversion; (3) "aiding and abetting"; and (4) financial elder abuse (§ 15610.30). She later dismissed the first three claims against the Lending Defendants, leaving only the elder abuse claim.

In April 2024, the Lending Defendants moved for summary judgment of the financial elder abuse claim. They argued they processed the loan as normal, and owed no duty to tell Norris about the independent appraisal. Moreover, they could not have acted with an intent to defraud or by undue influence, since it is undisputed they never met or spoke to Norris, and were unaware of her age.

In opposition, Norris maintained that—by financing a transaction in which Norris sold her home for less than its appraised value—the Lending Defendants "assisted in the taking" of at least $150,000 of her equity "for a wrongful use" knowing that the taking would be harmful to her within the meaning of the financial elder abuse statute (§ 15610.30). She further asserted that the Lending Defendants were on notice that she was elderly because they knew (1) escrow was delayed when she had trouble securing housing in Nevada, (2) her adult children were helping her with escrow, and (3) her husband had died. In any event, she argued, the statute does not require that the defendants know the plaintiff's age.

On reply, the Lending Defendants contended that Norris's argument, if accepted, would effectively impose strict liability on anyone involved in a transaction with a senior who does not receive the benefit of the bargain,

---

[2] Norris also sued Sargent's real estate company, a broker at the company, the escrow company, and the title company. Only the Lending Defendants are involved in this appeal.

4

which is not what the financial elder abuse statute contemplates.  They also emphasized that First Lending owed a fiduciary duty *to the buyers*, and if they communicated the results of the independent appraisal to Norris, they would breach that duty.

The trial court granted summary judgment.  The court found that Norris failed to show facts establishing that the Lending Defendants violated the financial elder abuse statute.  More specifically, under the statute, "the 'property taken' must be taken as a result of fraud and/or undue influence" and Norris failed to submit evidence on those issues.  The court agreed with the Lending Defendants that "the law does not impose a strict liability standard on businesses or people when they transact with seniors covered by the statute."

## DISCUSSION

For purposes of the Elder Abuse and Dependent Adult Civil Protection Act, an "elder" is anyone "residing in this state, 65 years of age or older." (§ 15610.27.)  Financial elder abuse occurs when a person or entity "[t]akes, secretes, appropriates, obtains, or retains real or personal property of an elder" (a) "for a wrongful use" and/or (b) "with intent to defraud" or (c) "by undue influence, as defined in [s]ection 15610.70." (§ 15610.30, subd. (a)(1) & (3).)  A person or entity may be liable for financial elder abuse by "assist[ing]" in any of the foregoing conduct as well.  (*Id*., subd. (a)(2) & (3).)

Here, Norris does not challenge the trial court's ruling that there are no triable issues of material fact as to whether the Lending Defendants took her home equity, or assisted in taking her equity, with the intent to defraud or by undue influence.  Norris maintains, however, that there is a triable issue on whether they did so for a wrongful use.

5

## A.    *Standard of Review*

The purpose of summary judgment under Code of Civil Procedure section 437c "is to provide courts with a mechanism to cut through the parties' pleadings in order to determine whether, despite their allegations, trial is in fact necessary to resolve their dispute." (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 843.)  "Summary judgment is appropriate only 'where no triable issue of material fact exists and the moving party is entitled to judgment as a matter of law.' " (*Regents of University of California v. Superior Court* (2018) 4 Cal.5th 607, 618.)

We review the grant of summary judgment de novo, "considering all of the evidence the parties offered in connection with the motion (except that which the trial court properly excluded) and the uncontradicted inferences the evidence reasonably supports." (*Merrill v. Navegar, Inc.* (2001) 26 Cal.4th 465, 476.)  We "liberally constru[e] the evidence in support of the party opposing summary judgment and resolving doubts concerning the evidence in favor of that party." (*State of California v. Allstate Ins. Co.* (2009) 45 Cal.4th 1008, 1018.)  "Because we review 'the ruling, not the rationale,' we may affirm summary judgment on a different basis than the trial court." (*Vulcan Lands, Inc. v. Currie* (2023) 98 Cal.App.5th 113, 122.)

## B.    *No Triable Issue On Wrongful Use*

The financial elder abuse statute specifies that "[a] person or entity shall be deemed to have taken, secreted, appropriated, obtained, or retained property *for a wrongful use* if, among other things, the person or entity takes, secretes, appropriates, obtains, or retains the property and the person or entity knew or should have known that this conduct is likely to be harmful to the elder . . . ." (§ 15610.30, subd. (b), italics added.)  It further clarifies that "a person or entity takes, secretes, appropriates, obtains, or retains real or

personal property when an elder . . . is deprived of any property right, including by means of an agreement . . . ." (*Id.*, subd. (c).)

Two appellate cases applying these provisions are instructive here. In *Paslay v. State Farm General Insurance Company* (2016) 248 Cal.App.4th 639, the plaintiffs—one of whom was elderly—alleged the defendant insurer committed financial elder abuse by failing to pay certain policy benefits and forcing the plaintiffs to move back into their home while it was still under construction after sustaining water damage. (*Id.* at p. 643.) In evaluating whether the evidence created a triable issue regarding a wrongful use of policy benefits, the *Palsay* court observed "that to establish a 'wrongful use' of property to which an elder has a contract right, the elder must demonstrate a breach of the contract, or other improper conduct" as well as the defendant's actual or constructive knowledge " 'that this conduct is likely to be harmful to the elder.' " (*Id.* at p. 657.) In that case, there were triable issues as to whether the insurer breached the insurance contract by refusing to pay benefits. (*Ibid.*) But there were no such issues as to the latter requirement, since there was no evidence that the insurer "acted in subjective bad faith or unreasonably in denying additional benefits." (*Id.* at p. 658.)

In *Stebley v. Litton Loan Servicing, LLP* (2011) 202 Cal.App.4th 522, the plaintiffs—one of whom was a dependent adult—borrowed on their home and fell behind on payments, so the defendants (entities involved in making the loan) foreclosed on the property. (*Id.* at p. 525.) The trial court granted summary adjudication of a financial abuse claim, finding the plaintiffs "failed to allege any property was taken *wrongfully*," and the appellate court agreed. (*Id.* at p. 527.) The appellate court observed, " 'It is simply not tortious for a commercial lender to lend money, take collateral, or to foreclose on collateral when a debt is not paid. . . . [A] commercial lender is privileged to pursue its

7

own economic interests and may properly assert its contractual rights.' " (*Id.* at p. 528.) And in that case, there were no allegations that the defendants took anything the plaintiffs were entitled to. (See *id.* at p. 527.)

While neither of those cases are factually identical, we distill from them a threshold requirement that the defendant do something wrongful or improper. Norris fails to create a triable issue on this point. It is undisputed that the buyers retained First Lending to arrange their home loan, that First Lending secured MiMutual to provide the loan, and that MiMutual requested the independent appraisal in the course of its underwriting process. Norris fails to demonstrate on these facts that the Lending Defendants had any duty to inform her about the results of the independent appraisal designed to protect the lender's economic interests.

A lending institution does not owe any fiduciary duty to its borrower-client. (*Nymark v. Heart Fed. Savings & Loan Assn.* (1991) 231 Cal.App.3d 1089, 1093, fn. 1.) And generally, when an institution acts within the scope of its regular activities as a lender of money, it does not owe any duty of care to the borrower. (*Id.* at pp. 1092, 1096.) Thus, when a lender appraises a property in the usual course and scope of its loan processing—the purpose of which is to protect *itself* by ensuring the property provides adequate security for the loan—it owes no duty of care to the borrower regarding that appraisal. (*Id.* at pp. 1096–1097.) Norris does not allege that MiMutual acted beyond the scope of an ordinary lender, such that it owed any duty of care to the buyers, much less Norris herself, a stranger to the loan transaction.

As the mortgage broker, First Lending (and Vogan) owed a fiduciary duty to the buyers. (See, e.g., Civ. Code, § 2923.1.) Norris offers no argument as to how this duty could possibly include communicating the results of the independent appraisal to her, the seller, which would jeopardize the economic

8

interest of the buyers.  Nor can we conceive of any such theory.  Notably, we see neither prejudice nor injustice in the result here considering it is undisputed that Norris hired her own appraiser, who reported to her one month before closing that her home was worth approximately $619,000, yet she still decided to proceed with the sale.

## DISPOSITION

The judgment is affirmed.  Respondents are entitled to costs on appeal.

DATO, Acting P. J.

WE CONCUR:

BUCHANAN, J.

KELETY, J.

9