353 So.2d 847 (1977)
Milton T. SCHAEFFER, Emil Massaro, and Louise W. Lindland, As Executrix of the Estate of Richard L. Lindland, Deceased, Appellants,
v.
Ben S. GILMER et al., Appellees.
No. CC-408.
District Court of Appeal of Florida, First District.
August 4, 1977.
*850 James A. Bledsoe, Jr., of Mahoney, Hadlow & Adams; and John F. Corrigan, of Corrigan, Werber & Moore, Jacksonville, for appellants.
Jacqueline B. Whatley, of Gibbons, Tucker, McEwen, Smith, Cofer & Taub, Tampa, Arthur C. Fulmer, Lakeland and J. David McFadden, Daytona Beach, for appellees.
RAWLS, Judge.
Florida's second land boom, which may be characterized as the "go go" condominium era of the first sequential of this decade, has generated considerable litigation between real estate investment trust lenders and speculative builder borrowers. This interlocutory appeal is a progeny of the era. The primary issue now presented is the propriety of the trial court's action in striking certain affirmative defenses and counterclaims proffered by individual guarantors.
In December of 1972, The Bastillion Development Co., Inc., negotiated with Tri-South Mortgage Investors, a Massachusetts business trust for which appellee Gilmer is trustee, for a construction loan on property located in New Smyrna Beach, Florida. The following individuals who "had an interest" in Bastillion: Milton T. Schaeffer, J. Gerald Wetzel, Richard L. Lindland,[1] Joe H. Schaeffer, Jr., Vito J. Nico and Emil Massaro, executed two agreements of guaranty and indemnity in favor of Tri-South. One agreement guaranteed the payment of $450,000.00, which loan was to provide funds for Bastillion "to acquire the real property encumbered by the Mortgage and retire existing indebtedness", and the other agreement guaranteed the repayment of $4,150,000.00, which loan was to provide funds for Bastillion to construct a condominium complex on the property. The latter guaranty agreement specifically provided:
"... [T]he Borrower's [Bastillion] obligation to construct said condominium complex and requirements for and conditions precedent to the disbursement of the loan proceeds are set forth in a Construction Loan Agreement of even date herewith between the Borrower and the Trust (the `Construction Loan Agreement')... ."
The contemplated project failed during construction of the condominiums. Tri-South instituted its complaint seeking by Count I to foreclose its mortgages and by Count II damages against the individual guarantors. A severance of the two counts was granted by the trial court, and a final judgment of foreclosure was entered against Bastillion and certain lien claimants in the sum of $4,511,951.68. This action is solely directed to Count II of the complaint wherein Tri-South is seeking damages pursuant to the guaranty agreements.
On June 14, 1976, the trial court granted Tri-South's motion to strike the amended affirmative defenses and counterclaims asserted by defendants, Milton T. Schaeffer, Emil Massaro and Louise W. Lindland, as executrix of the estate of Richard L. Lindland, deceased.
*851 Tri-South contended in the trial court and now contends that the subject guaranty agreement is absolute and thus the guarantors have no standing to assert as a defense to the guaranty alleged breaches of contract between borrower and lender, citing as its authority 38 Am.Jur.2d, Guaranty § 52. A further contention of Tri-South's is that evidence of failures on the part of a promisee is inadmissible to alter the obligation of a guarantor by one who unconditionally promises to repay the obligation of another.
Citing Anderson v. Trade Winds Enterprises Corp., 241 So.2d 174 (Fla. 4th DCA 1970), Tri-South reasons that the guaranty here considered, being "absolute" in character, the guarantors became liable immediately upon failure of payment and were deprived by the instrument they executed of any affirmative defenses. If the law was cast in concrete and labels such as "absolute" and "conditional" were imbedded therein, judicial labor could be relegated to the "computer world". As observed at the outset, the instant guaranty specifically refers to: "... conditions precedent to the disbursement of loan proceeds are set forth in a Construction Loan Agreement of even date herewith between the Borrower and the Trust... ." We hold that the two written instruments must be construed together, and if a label must be affixed, the instant guaranty is "conditional". This does not change the express terms of the guaranty agreement, but it does permit the assertion of appropriate affirmative defenses by the guarantors. Northwestern Bank v. Cortner, 275 So.2d 317 (Fla. 2nd DCA 1973). The guarantors and the creditor, being parties to the contract of guaranty which specifically incorporates the loan agreement between the debtor and the creditor, any rights of the creditor are determined by reading the two instruments together. The law imposes on the creditor an obligation not to deal with the debtor or the security in such a manner as to harm the interest of the guarantors. Dorsy v. Maryland National Bank, 334 So.2d 273 (Fla. 3rd DCA 1976). It is with the foregoing principles of law in mind that we undertake the task of analyzing the multitudinous proffered affirmative defenses, a substantial portion of which in days of old would have been characterized as "speaking demurrers".

First Affirmative Defense Emil Massaro and Milton Schaeffer (Failure of Consideration)
Paragraph 5 alleges that "the consideration" for execution of the documents was Tri-South's disbursement of the construction loan according to the terms of the agreement. Obviously, the consideration was Tri-South's agreement to loan $4,150,000.00 to Bastillion. The trial court correctly struck paragraph 5 of Massaro's and Schaeffer's affirmative defense.
Paragraph 6  Breach of Construction Loan Agreement.
Subparagraph (a) alleged that Tri-South failed to enforce the construction loan against Bastillion. The trial court erred in striking this defense.
(b) Alleges failure of Tri-South to supervise construction of the Bastillion project. Such a duty was not imposed upon Tri-South. The trial court correctly struck this defense.
(c) Alleges wrongful disbursement by Tri-South, inter alia: "... by failing to obtain architect's certificates, affidavits, lien waivers, releases and other assurances from the contractors, suppliers and materialmen that they were receiving the loan proceeds for work performed... ." This portion was correctly stricken by the trial court. The other allegations in this subparagraph constitute a cognizable defense and should not have been stricken.
(d) Alleges that Tri-South wrongfully discontinued performance under the construction agreement by discontinuing disbursements when all conditions precedent had been met by borrower. The trial court erred in striking this defense.
Paragraph 7 again alleges failure of consideration. The trial court correctly struck this defense.

*852 Second Affirmative Defense (Lack of Mutuality)
Paragraphs 8 and 9, according to the guarantors, allege lack of mutuality of obligation. The trial court correctly struck these two paragraphs.

Third Affirmative Defense (Material Alteration of Risk)
Paragraph 10 alleges that under the terms of the guaranty, construction loan agreement and general principles of guaranty, Tri-South was required to give notice prior to altering the guarantors' risk.
Paragraph 11 alleges that the guarantors are discharged from liability because:
(a) Tri-South has continuously treated the Bastillion loan as related to other Joe H. Schaeffer, Jr., obligations and rendered their obligations under the Bastillion loan subject to the terms and conditions to these other loans.
(b) Tri-South arbitrarily reallocated the distribution of the loans so as to increase interest reserve, thereby reducing the amount of the loan below amount necessary to complete construction.
(c) Tri-South permitted construction of the second condominium building before the phasing requirements of the mortgages, construction loan agreement and commitment letters had been fulfilled.[2]
The trial judge erred in striking the foregoing third affirmative defense.

Fourth Affirmative Defense
This defense was apparently not stricken by the trial judge which alleges payment or alternatively the guarantors are entitled to a credit equal to the fair market value of the mortgaged property.

Fifth Affirmative Defense

(Failure to Fulfill Conditions Precedent)
The trial court did not err in striking the fifth affirmative defense. The error, if any, of Tri-South in disbursement of loan proceeds has been more properly made a subject matter of other affirmative defenses.

Sixth Affirmative Defense (Estoppel)
Subparagraph (a) of paragraph 17 alleges that Tri-South waived default because, at the outset, it knew that the loan was insufficient to cover cost of construction. The lender was not an insurer to the borrower or guarantors that the aggregate loan would be ample to complete the project. The trial court correctly struck this defense.
(b) Tri-South waived default upon receipt of an interest payment. Such allegation does not exonerate guarantors. The trial court correctly struck this defense.
(c) Tri-South negligently disbursed and grossly mismanaged the Bastillion loan thereby preventing borrower from performing. The trial court erred in striking this defense.
(d) By willfully failing to disburse loan proceeds when the borrower had fulfilled all conditions precedent, Tri-South contributed to the failure of the project. The trial court erred in striking this defense.
(e) The trial court erred in striking allegations of general estoppel founded upon the guarantors' counterclaim.

Seventh Affirmative Defense (Failure to Notify of Misuse)
Paragraph 18 alleges that Tri-South failed to notify guarantors of misuse of the loan proceeds by the general contractor. Tri-South was not under a duty to supervise the construction; thus, the trial court did not err in striking this defense.

*853 Eighth Affirmative Defense
Paragraph 19 is predicated upon an allegation that borrower had not defaulted. This defense has been resolved by the trial court and this court's decision in Bastillion Development v. Gilmer, 339 So.2d 1163 (Fla. 1st DCA 1976), contrary to guarantors' position; hence the trial court correctly struck this defense.

Ninth Affirmative Defense
Paragraph 20  This defense is based upon the question of usury as to interest charged Bastillion. Again, this issue was resolved contrary to the guarantors' position in the Bastillion foreclosure proceeding, 339 So.2d 1163. The trial court correctly struck this defense.

Counterclaim Emil Massaro and Milton Schaeffer
The counterclaim of these two guarantors alleges the history of the subject loan and bases its assertion, primarily, upon substantial transactions between Joe Schaeffer, Jr., and Tri-South. They allege, basically, that Joe Schaeffer is one of the principals (25 percent) of Bastillion and a co-guarantor of its loan. A course of conduct between Tri-South and Joe Schaeffer is alleged to have transpired with the result that an aggregate of $16,200,000 loans in which Joe Schaeffer was the primary activist were lumped together, with decisions injurious to the Bastillion loan being made by Tri-South for the benefit of the other Joe Schaeffer loans. A major allegation in their counterclaim is that Tri-South "took over" the project, represented that they would complete the project, made disbursements, and then failed to complete same (cf. Dunson v. Stockton Whatley, Davin & Co., Fla., First DCA, 346 So.2d 603, opinion filed May 27, 1977). Although the counterclaim incorporates considerable "heifer dust" in the allegations, the pleading, as a whole, states a cause of action against Tri-South. The trial court erred in dismissing the counterclaim of Emil Massaro and Milton Schaeffer.

Answer and Counterclaim Estate of Lindland
Lindland's answer substantially asserted the same affirmative defenses as that of Massaro and Schaeffer. One exception is that Lindland did not assert a defense of lack of mutuality. As stated above, the trial court's striking of this defense pled by Massaro and Milton Schaeffer has been sustained. Lindland further proffered the affirmative defense that the death of Richard L. Lindland revokes his guaranty since the alleged deficiencies were not established until after he died. The subject guaranty instrument specifically provides that it shall be binding upon the heirs and legal representatives of Lindland and inure to the benefit of Tri-South. The trial court correctly struck this defense. Further, Lindland asserted the defense that the subject instrument is a guaranty of collectibility. The specific terms of the guaranty agreement refute this claim; thus, the trial court was correct in striking this defense.
Our analysis of Emil Massaro's and Milton Schaeffer's defenses and counterclaim should be adequate for the trial court to pass upon Lindland's answer and counterclaim.
The cause is reversed with directions that the approved affirmative defenses be reinstated together with the counterclaims.
Reversed and remanded.
McCORD, C.J., and BOYER, J., concur.
NOTES
[1] Lindland died since the institution of this suit and his executrix, Louise W. Lindland, has been substituted as a party.
[2] Paragraph 6.a. under "CONDITIONS OF LOAN" of the construction loan agreement provides:

"... a. The total amount of disbursement shall be limited to $2,450,000 until such time as the Borrower has provided evidence satisfactory to Lender that a minimum of 72 of the condominium units have been sold. Borrower shall further be restricted from beginning construction of the second 72-unit condominium building until the aforementioned sales requirements has been met."