Daniel M. SCHWARTZ, Bernice L. Schwartz, and Alvin I. Smith, Plaintiffs and Respondents,

v.

Michael S. TANNER, Louisa Tanner, Stan Tanner, Earl J. Knudson, M. D. Haltom, Ralph P. Walker, Western Aeronautical and Engineering Corporation and United Equities, Inc., Defendants and Appellants.

Nos. 14832 and 14844.

Supreme Court of Utah.

March 8, 1978.

---

Robert Van Sciver, A. M. Ferro, John B. Anderson, Salt Lake City, for defendants and appellants.

Harley W. Gustin, Salt Lake City, for plaintiffs and respondents.

HALL, Justice:

Defendants appeal separately from a judgment based upon fraud involving the sale of a house.

Plaintiffs Schwartz, hereinafter referred to collectively as "Schwartz," were the owners of a residence in Salt Lake County which was listed for sale. Schwartz was contacted by, and met with, defendant Haltom for two hours at the San Francisco Airport during which time a purchase agreement was negotiated pertaining to said residence. Haltom represented himself as the agent of Stan Tanner,[1] the father of defendant Michael S. Tanner. (Hereafter, they shall be referred to as "Stan" and "Michael," respectively.)

Haltom represented that Stan was desirous of purchasing the property as a personal residence for his son Michael whom he was enticing to move to Salt Lake City for the purpose of operating one of his businesses. Part of that enticement was to provide Michael with title to the property, free and clear of any encumbrances. Stan was willing to pay Schwartz's asking price of $47,000 by assuming an approximate $3,000 mortgage balance and executing a promissory note for the remainder of the purchase price. The note was to be secured by stock in Bishop Industries which supposedly was selling at $6.00 to $8.00 per share and stock in Western States Fund Corporation.

Haltom further represented that he had first-hand knowledge of an approved merger that was pending between Bishop Industries and United Equities, the combined assets of which were 15 million dollars; that United Minerals of Nevada and Western States Land Corporation of Utah would be

---

1. Stan Tanner is a party defendant in this case and judgment by default was taken against him from which no appeal was taken.

merged into United Equities and that new assets were being put into Bishop Industries, including a 915,000 acre Australian buffalo ranch already in escrow. Other existing assets of the various companies owned or controlled supposedly included ranches, silver, uranium and gypsum properties, an auto service center and a company manufacturing incinerating toilets found to be smog free by Los Angeles authorities.

Schwartz relied upon Haltom's representations regarding the value of the stock pledged as security and agreed to the sale on the terms offered, plus the additional consideration of an option Stan granted him for the purchase of 2,500 shares of Bishop Industries, or equivalent shares of the merged corporation at $8.00 per share. He thereupon executed a warranty deed on December 29, 1968, in favor of Michael, free and clear of all encumbrances, and Stan caused it to be recorded in the office of the Salt Lake County Recorder on January 14, 1969. Thereafter, on February 20, 1969, prior to moving into the residence, and despite his testimony at trial that Stan was to furnish him with title free of encumbrance, Michael and his wife mortgaged the property for $25,000 which was for the benefit of Stan since the bulk of the loan proceeds were diverted to one of his corporations.

Stan defaulted on the note, the stock pledged had no market value, the buffalo ranch deal (which had been represented as being in escrow) did not materialize and the merger was never accomplished.

The trial court determined that Stan perpetrated a fraud upon Schwartz through his agent, Haltom, and that the acts and conduct of Michael constituted sufficient participation therein to render him liable in damages as well.

Haltom and Michael assert the evidence failed to support the elements of fraud or the existence of a conspiracy to defraud, and the Schwartz had no right to rely upon the representations made.

It is to be noted at the outset that the long-standing rules of appellate review require this Court to view the evidence in a light most favorable to the prevailing party below[2] and not to substitute our judgment for that of the trial court on issues of fact determined from substantial, competent, admissible evidence.[3]

■ The burden was upon Schwartz to prove the fraud charged by clear and convincing evidence[4] hence the question to be decided is whether the evidence presented was sufficient to sustain that burden.

Fraud is a generic term which embraces all the multifarious means which human ingenuity can devise and are resorted to in order to gain an advantage over another. In its general or generic sense, it comprises all acts, omissions and concealments involving a breach of legal or equitable duty and resulting damage to another.[5]

■ A person cannot be held liable for a fraudulent misrepresentation unless he made it himself or authorized another to make it for him or in some way participated therein. However, the circumstances may be such as to impose liability for representations made by others as where parties jointly participate in fraud. Conspiracy is an example thereof but it is not essential that a conspiracy existed.[6]

■ The elements of actionable fraud to be proved are a false representation of an existing material fact, made knowingly or recklessly for the purpose of inducing reliance thereon, upon which plaintiff reasonably relies to his detriment.[7]

■ Taking into consideration only the undisputed facts in this case, the sum and

2. *Jardine v. Brunswick Corporation*, 18 Utah 2d 378, 423 P.2d 659 (1967).

3. *Charlton v. Hackett*, 11 Utah 2d 389, 360 P.2d 176 (1961).

4. *Pace v. Parrish*, 122 Utah 141, 247 P.2d 273 (1952).

5. 37 C.J.S. Fraud § 1.

6. 37 C.J.S. Fraud § 61.

7. Supra, footnote 4.

substance thereof is that Schwartz was induced by Stan and Haltom to convey a valuable residence, free of any security interest, agreeing instead to accept installment payments pursuant to the terms of a promissory note secured by a pledge of stock which was worthless. Promptly after conveyance, Michael mortgaged the residence for $25,000 which he handed over to Stan. When Stan defaulted on the note Schwartz was left with nothing.

The evidence clearly supports the conclusion of the trial judge that Haltom, acting as Stan's agent, falsely represented the assets, actual and potential, of the various corporate entities involved and the value of the stock pledged as security. Also, the evidence shows that such false representations were the inducement for Schwartz to enter into the transaction and that he reasonably relied thereon.[8]

In regard to Michael's participation in the transaction, the finder of fact would indeed be naive not to conclude that his actions were part and parcel of a joint participation in fraud. The natural and logical inference to be drawn from all of the circumstances and his actions in mortgaging the property and divesting himself of the proceeds thereof is that he was acting in concert with Stan and Haltom. Had it not been for his acts of participation, and had the defendants been in fact acting in reasonably good faith, the whole matter could have been resolved by a simple reconveyance to Schwartz.

Affirmed. Costs to Schwartz.

ELLETT, C. J., and CROCKETT, MAUGHAN and WILKINS, JJ., concur.

---

8. *Bezner v. Continental Dry Cleaners, Inc.,* Utah, 548 P.2d 898 (1976); See also, Williston on Contracts, Third Edition, Sec. 1517.