359 So.2d 540 (1978)
Vincenzo ARMETTA et al., and All Those Listed in Schedule a Attached Hereto, Appellants,
v.
CLEVETRUST REALTY INVESTORS et al., Appellees.
INTERVENORS GROUP II, Appellant,
v.
CLEVETRUST REALTY INVESTORS, and the Barth Corporation, et al., Appellees.
Nos. 76-2258, 76-2372.
District Court of Appeal of Florida, Fourth District.
May 31, 1978.
Rehearing Denied June 28, 1978.
*541 Alan S. Becker and Peter S. Sachs of Becker, Poliakoff & Sachs, P.A., Fort Lauderdale, for appellants.
Stanley L. Seligman of Stanley L. Seligman, P.A., Hollywood, for appellant intervenors Group II.
Maurice M. Garcia of Abrams, Anton, Robbins, Resnick, Schneider & Mager, P.A., Hollywood, for appellees.
*542 ANSTEAD, Judge.
Appellants, condominium unit purchasers, challenge the trial judge's order granting a motion to dismiss several counts in appellants' counterclaim against the appellee-mortgage lender, Clevetrust Realty Investors. We affirm.
In June 1973 Clevetrust entered into an agreement whereby it lent money to the Barth Corporation for the construction of Emerald Isles West, a condominium project in Davie, Florida. The loan was secured by a mortgage. On October 16, 1974, Clevetrust filed a complaint to foreclose the mortgage against the Barth Corporation. On October 25, 1974, the appellant purchasers filed a motion to intervene, which was granted. The appellants were seeking some $1.5 million dollars in deposits paid to the developer. In addition to seeking relief against the developer, the appellants filed various counterclaims against the appellee lender. The trial judge dismissed with prejudice several counts of the counterclaim which were based on breach of fiduciary duty, accounting, negligence, and joint venture.
Both Counts III and IX are predicated on the existence of a fiduciary relationship between the appellants and appellee which the appellants claim was created by Section 711.25 (1971) of the Florida Statutes and Paragraph 14 of the mortgage between the appellee and the developer, Barth.
At the time in question Section 711.25 restricted the uses to which sellers and developers could utilize deposit monies paid by condominium purchasers. In paragraph 14 of the mortgage agreement the appellee lender placed restrictions on the developer Barth similar to those contained in Section 711.25. However, neither the statute or paragraph 14 creates a duty on the part of the appellee lender to collect and manage these deposit monies. Both provisions impose a duty on the seller and the developer. The statute protects the purchaser and paragraph 14 protects the lender, but neither provision imposes a fiduciary duty on the lender to protect the purchaser.
Count X of the counterclaim seeks to impose liability on the appellee lender for a variety of alleged negligent acts in supervising the developer's actions. This claim is largely predicated on Connor v. Great Western Savings and Loan Association, 69 Cal.2d 850, 73 Cal. Rptr. 369, 447 P.2d 609 (1968) and Dunson v. Stockton, Whatley, Davin & Co., 346 So.2d 603 (Fla. 1st DCA 1977).
In Dunson the court found that the lender assumed complete control of the developer-borrower's building operations so that:
The separate identities of lending institution and construction company were extinguished and the identities merged into one, as did the identities of mortgagor and mortgagee. Id. at 606.
The court went on to hold that under such circumstances the lender was estopped from disregarding a construction contract entered into between the builder and the original owner of the mortgaged land who had conveyed the property to the builder so the builder could obtain construction financing.
In Connor a lender was held liable to home purchasers not in privity with the lender because the lender had acted beyond the role of lender and had become an active participant, along with the developer, in the home construction enterprise. The California court noted:
Even though Great Western is not vicariously liable as a joint venturer for the negligence of Conejo, there remains the question of its liability for its own negligence. Great Western voluntarily undertook business relationships with South Gate and Conejo to develop the Weathersfield tract and to develop a market for the tract houses in which prospective buyers would be directed to Great Western for their financing. In undertaking these relationships, Great Western became much more than a lender content to lend money at interest on the security of real property. It became an active participant in a home construction enterprise. It had the right to exercise extensive control of the enterprise. Its financing, which made the enterprise possible, *543 took on ramifications beyond the domain of the usual money lender. It received not only interest on its construction loans, but also substantial fees for making them, a 20 percent capital gain for "warehousing" the land, and protection from loss of profits in the event individual home buyers sought permanent financing elsewhere. Id., 73 Cal. Rptr. at 376, 447 P.2d 616 at 616.
The allegations involved herein fall short of both Dunson and Connor. Although appellants assert that Clevetrust became an active participant in the condominium construction project, their pleadings contain insufficient factual allegations to support this conclusion. Nor is it alleged that the appellee lender took over control of the developer. Most of the complaints relate to the default of the developers for which the appellants seek to impose liability on the lender through supervisory terms of the loan agreement. However, we find nothing in the terms of the loan agreement which makes the lender an active participant in the development beyond the traditional role of mortgage lender.
A lender owes no duty to others to supervise the construction and development of projects which it has financed. Schaeffer v. Gilmer, 353 So.2d 847 (Fla. 1st DCA 1977). The only supervisory provisions contained in the loan agreement were inserted for the protection of the lender, as a lender, not as a participant in the development. We reject Connor to the extent that it is interpreted as broadly holding a lender liable to third party purchasers of dwelling units constructed and sold by the developer-borrower. Even when a lender is in privity with a purchaser, provisions in the mortgage for inspection by the lender of the project do not give rise to a duty by the lender to the purchaser-mortgagor to see that the project is properly constructed. Rice v. First Federal Savings and Loan Association of Lake County, 207 So.2d 22 (Fla. 2d DCA 1968). Absent unusual circumstances, such as contained in the Connor and Dunson cases, provisions contained in a loan agreement solely for the protection of the lender do not create a duty on the part of the lender to others.
Appellants also rely on the case of A.R. Moyer, Inc. v. Graham, 285 So.2d 397 (Fla. 1973) which sets out a professional architect's responsibility to third persons for negligence. Also see McAbee v. Edwards, 340 So.2d 1167 (Fla. 4th DCA 1976). Those cases have no application here. As stated above, a lender owes no duty to others to supervise financed construction. There is little, if any, analogy between the role of an architect in supervising the construction of a project and that of a lender who supplies the funds.
As to Count XV on joint venture, we feel the complaint has the same deficiencies as were noted in First Wisconsin National Bank v. Roose, 348 So.2d 610, 611 (Fla. 4th DCA 1977):
There is no allegation of any agreement between the mortgagor and mortgagee except the agreement for financing. There is no allegation of a joint proprietary interest in the development. There is no allegation of a community of interest in the performance of a common purpose and no allegation that each would share in the profits and losses. Absent clear allegations in accordance with the guidelines established in the cases cited above, we cannot impose a duty upon a mortgagee greater than the one established as a money lender and security holder. Id. at 611.
The interest of the appellee lender is admittedly that of money lender and security holder. For example, no allegations are made that any profits or losses were anticipated by the appellee lender beyond those anticipated as interest charged on the money loaned.
The appellants also claim procedural error by the trial judge for considering matters outside the amended counterclaim in granting appellee's motion to dismiss and in subordinating appellants' claim to the main suit already pending. We find no error. From our review of the pleadings set out above, we find there was legal justification for granting the motion to dismiss. *544 And, as evidenced by Fla.R.Civ.P. 1.230, intervention is subordinate to and recognizes the propriety of the main proceeding. Trawick's Fla.Prac. and Proc., § 4-9, Intervention (1977). No justifiable reason for holding otherwise has been demonstrated here.
AFFIRMED.
DOWNEY, C.J., and DAUKSCH, J., concur.