**Robert J. DeBRY and Joan DeBry, Plaintiffs and Appellants,**

**v.**

**VALLEY MORTGAGE CO., et al., Defendant and Appellee.**

**No. 910328–CA.**

Court of Appeals of Utah.

Aug. 3, 1992.

Rehearing Denied Aug. 31, 1992.

Edward T. Wells, Salt Lake City, for plaintiffs and appellants.

Thomas R. Grisley, Salt Lake City, for defendant and appellee.

Before GARFF, GREENWOOD and RUSSON, JJ.

GREENWOOD, Judge:

This is an appeal from an order granting Valley Mortgage Company's (Valley Mortgage) motion to dismiss appellants Robert J. and Joan DeBry's (the DeBrys) Fourth Amended Complaint pursuant to Utah Rule of Civil Procedure 12(b)(6), for failure to state a claim upon which relief can be granted. We affirm.

When reviewing a motion to dismiss under Rule 12(b)(6), "we state the facts in a light most favorable to the party against which the rule 12(b)(6) motion was brought." *St. Benedict's Dev. Co. v. St. Benedict's Hosp.*, 811 P.2d 194, 196 (Utah 1991). Further, we accept the facts alleged in the complaint as true, including reasonable inferences drawn from those facts. *Id.*

"A motion to dismiss is appropriate only where it clearly appears that the plaintiff or plaintiffs would not be entitled to relief under the facts alleged or under any state of facts they could prove to support their claim." *Prows v. State*, 822 P.2d 764, 766 (Utah 1991) (citing *Colman v. Utah State Land Bd.*, 795 P.2d 622, 624 (Utah 1990)); *see also, Olson v. Park–Craig–Olson, Inc.*, 815 P.2d 1356, 1360 (Utah App.1991) ("Dismissal of a claim under Rule 12(b)(6) is a severe measure given the liberality of notice pleading"). "Because the propriety of a 12(b)(6) dismissal is a question of law, we give the trial court's ruling no deference and review it under a correctness standard." *St. Benedict's Dev. Co.*, 811 P.2d at 196.

## BACKGROUND

The DeBrys purchased a newly constructed office building located at 4252 South 700 East in Salt Lake City, Utah, from Del Bartel and Dale Thurgood dba Cascade Enterprises (Cascade). Valley Mortgage provided construction financing for the building through a $300,000 loan to Cascade. Cascade constructed the building without obtaining a building permit or county approval of building plans. The building was not inspected by county inspectors, as required by applicable building codes, and contained numerous construction defects. As a result of building defects and code violations, the DeBrys could not legally occupy the building until approximately four years after their purchase.

The DeBrys sued Valley Mortgage and others in Third District Court in regard to the building and its deficiencies. The trial court granted Valley Mortgage's motion to dismiss and this court reversed in an unpublished opinion, holding that the trial court abused its discretion in denying the DeBrys' motion for leave to amend their complaint.

On remand, the DeBrys amended their complaint against Valley Mortgage. The amended complaint alleged concealment, negligent misrepresentation and negligence or lender liability by Valley Mortgage. On motion by Valley Mortgage, the trial court again dismissed the complaint with prejudice. This appeal followed.

The DeBrys allege the following facts which are relevant to our consideration: Pursuant to its contract with Cascade, Valley Mortgage undertook obligations to (1) assure that the builder had county approved plans, permits, and zoning; (2) inspect the building every three months to assure timely completion and acceptable workmanship; and (3) control disbursement of construction funds. Valley Mortgage sought and obtained a long term financing commitment from Beneficial Life Insurance Co. Cascade's construction loan was initially due on February 1, 1985. Valley Mortgage extended the loan several times, ultimately to December 12, 1985. The long term financing commitment from Beneficial Life expired prior to that date. During the last several months of Cascade's construction, Valley Mortgage paid contractors directly, thus effectively taking over the project, according to the DeBrys.

The DeBrys also allege Valley Mortgage knew that there were insufficient construction funds to complete the building and cure the building's defects and also knew of the DeBrys' purchase contract with Cascade. Valley Mortgage also knew that the only source of funds available to repay the construction loan as of December, 1985, was the proposed sale to the DeBrys. Valley Mortgage knew or should have known of the construction defects and code violations when the DeBrys purchased the building. The DeBrys relied on Valley Mortgage's reputation as a lender when they assumed that certain construction tasks had been completed, e.g., issuance of a building permit and approval of plans, adequate inspections throughout construction, and disbursement of funds after timely and satisfactory construction progress in conformance with building plans. Valley Mortgage failed to disclose this information to the DeBrys and the DeBrys suffered damages as a result.

## ISSUES

The issues on appeal are the following: (1) Did the trial court commit reversible error when it refused to follow this court's instructions in the prior opinion in this case? (2) Did the trial court err in dismissing the DeBrys' causes of action for concealment, negligent misrepresentation and negligence? and (3) Did the trial court abuse its discretion by dismissing with prejudice rather than allowing further amendment of the complaint?

## LAW OF THE CASE

■ The DeBrys argue that the trial court refused to follow the mandate of the Utah Court of Appeals in the prior appeal on Valley Mortgage's Rule 12(b)(6) motion. This court reversed the trial court's first dismissal with prejudice in *Debry v. Valley Mortgage Co.*, No. 880255–CA (June 20, 1989), an unpublished decision. The opinion held that "the trial court abused its discretion in denying the motion to amend," and the matter was remanded in order for the DeBrys to amend their complaint. The opinion goes on to say:

> Debrys should set forth with particularity each cause of action in which they seek redress i.e., lender liability under *Connor v. Great W. Sav. & Loan Ass'n* [69 Cal.2d 850], 73 Cal.Rptr. 369, 447 P.2d 609 (1968), fraud, and negligent misrepresentation. These causes of action are fact sensitive, and therefore, proper disposition may not be determined until adequate discovery has fleshed out the relevant facts.

In a footnote, the court further stated:

[W]e do not suggest that Debry and their counsel are free to make Valley Mortgage a defendant and hope to turn up a claim against them in the course of discovery. On the contrary, each claim in the amended pleading must be "well grounded in fact," as revealed by "reasonable inquiry," as well as "warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law...." Utah R.Civ.P. 11.

The DeBrys now claim the opinion's citing of the *Connor* case constitutes the "law of the case" and is binding both on the trial court and this panel in the present appeal. They also argue that the opinion requires that a motion to dismiss be denied at least until "adequate discovery" is completed. After reviewing the prior opinion issued "not for publication," we disagree.

The purpose of the law of the case doctrine is "to avoid the delays and difficulties that arise when one judge is presented with an issue identical to one which has already been passed upon by a coordinate judge in the same case." *Sittner v. Big Horn Tar Sands & Oil, Inc.*, 692 P.2d 735, 736 (Utah 1984). Ordinarily, a judge cannot overrule the decision of another judge of the same court. *Richardson v. Grand Cent. Corp.*, 572 P.2d 395, 397 (Utah 1977). However, "the ruling of one judge as to the sufficiency or effect of pleadings, does not prevent another division of the court from considering the same question of law if it is properly involved on a subsequent motion which presents the case in a different light." *Id.*

This court's prior ruling addressed the appropriate standard of review when reviewing a motion to dismiss for failure to state a claim, and held the trial court had abused its discretion in denying the DeBrys' motion to amend their complaint against Valley Mortgage. The court suggested three causes of action which the DeBrys could plead with specificity in their amended complaint. These suggestions, however, as well as the reference to the *Connor* case, constituted dicta only. *Connor* was offered as an example of a case where lender liability or negligence was

successfully plead, but was not thereby adopted as the law of this case. Utah Code of Judicial Administration Rule 4–508 provides that unpublished opinions have no precedential value and may not be cited or used except for certain enumerated exceptions, including application of law of the case. Use of *Connor* as law of this case would result in its having precedential effect, without benefit of full analysis or consideration, contrary to the rule's plain meaning and intent. We therefore conclude that the allusion to *Connor* in the earlier appeal was merely dicta and does not constitute the law of this case. We further hold that we may re-examine the appropriateness of further discovery after the second motion to dismiss was filed, because the case is now presented in a "different light." *Richardson*, 572 P.2d at 397.

## SUFFICIENCY OF COMPLAINT

### Duty

In each cause of action against Valley Mortgage, there is a threshold question of the duty a lender owes to a third party, absent a contractual or fiduciary relationship. The DeBrys ask this court to recognize a duty running from a construction lender to a third party purchaser who had no interest in the property prior to the purchase contract and who had no contractual relationship with the lender. Most courts in other jurisdictions have been unwilling to extend a duty in these instances absent lender involvement that goes beyond a traditional lender role or where the lender misrepresents material facts to those third parties.

The duty concept in tort analysis is a policy determination. "[L]egal duties are not discoverable facts of nature, but merely conclusory expressions that, in cases of a particular type, liability should be imposed for damage done." *Tarasoff v. Regents of Univ. of California*, 17 Cal.3d 425, 131 Cal.Rptr. 14, 22, 551 P.2d 334, 342 (1976). " '[Duty] is not sacrosanct in itself, but only an expression of the sum total of those considerations of policy which lead the law to say that the particular plaintiff

is entitled to protection.'" *Id.* (quoting William L. Prosser, *Law of Torts* 332–33 (3d ed. 1964)).

"The issue of whether a duty exists is entirely a question of law to be determined by the court." *Ferree v. State*, 784 P.2d 149, 151 (Utah 1989). "Once it has been determined that a duty exists as a matter of law, then any claimed breach of that duty presents a question of fact to be resolved by the trier of fact." *R.A. Peck, Inc. v. Liberty Fed. Sav. Bank*, 108 N.M. 84, 88, 766 P.2d 928, 932 (App.1988).

In analyzing the DeBrys' complaint, we focus on the question of whether there is a sufficient factual basis alleged from which we can determine, as a matter of law, that Valley Mortgage owed a duty to the DeBrys.

### Lender Liability

■ The DeBrys' cause of action for lender negligence relies primarily upon the California case, *Connor v. Great W. Sav. & Loan Ass'n*, 69 Cal.2d 850, 73 Cal.Rptr. 369, 447 P.2d 609 (1968). In *Connor*, the California Supreme Court held that a construction lender, Great Western, owed a duty to third party purchasers of residential real estate to "exercise reasonable care to protect them from seriously defective construction whether caused by defective plans, defective inspection, or both." *Id.* 73 Cal.Rptr. at 380, 447 P.2d at 620. The court found a level of lender involvement that far exceeded the typical construction lender and developer relationship.

The lender participated as a buyer and seller of land in a large tract development, and also as a lender to some home buyers in the same development. Great Western received interest on its construction loans, and also received a fee for making the home purchase loans. Part of the arrangement included a twenty percent "capital gain for 'warehousing' the land, and protection from loss of profits in the event individual home buyers sought permanent financing elsewhere." *Id.* 73 Cal.Rptr. at 376, 447 P.2d at 616. The fact that the lender was not in privity of contract with all home buyer plaintiffs did not absolve it

of liability. *Id.* 73 Cal.Rptr. at 377, 447 P.2d at 617.

The court noted that "'[t]he determination whether in a specific case the defendant will be held liable to a third person not in privity is a matter of policy and involves the balancing of various factors.'" *Id.* (quoting *Biakanja v. Irving*, 49 Cal.2d 647, 320 P.2d 16, 19 (1958)).

In *Connor*, the court found that the success of the lender's transactions with the developer depended entirely upon the parties' ability to induce plaintiffs to buy homes in the tract and to finance the purchases with funds supplied by the lender. The lender received considerably more return on its investment than merely interest on a construction loan.

A year after *Connor* was decided, a California court of appeals ruled in a case similar to *Connor*, that a construction lender's participation in a residential development project was so minimal that it owed no legal duty to protect the purchasers from damages caused by construction defects. *Bradler v. Craig*, 274 Cal.App.2d 466, 79 Cal.Rptr. 401, 408 (1969). The complaint in *Bradler* alleged that the lender "'approved the plans and specifications, and construction methods used and supervised and inspected and approved the finished structure.'" *Id.* 79 Cal.Rptr. at 407. The lender allegedly knew that the "'property contained adobe, or expansive soil, requiring special structural safeguards which were not included'" in the construction of the house. *Id.*

The court of appeals distinguished *Connor*, and determined that the lender's "alleged participation was that of the usual and ordinary construction and purchase money lender, content to lend money at interest on the security of real property." *Id.*

The California legislature responded to *Connor* with legislation limiting construction lender liability. It enacted California Civil Code section 3434 (1969) which states:

A lender who makes a loan of money, the proceeds of which are used or may be used by the borrower to finance the de-

sign, manufacture, construction, repair, modification or improvement of real or personal property for sale or lease to others, shall not be held liable to third persons for any loss or damage occasioned by any defect in the real or personal property so designed, manufactured, constructed, repaired, modified or improved or for any loss or damage resulting from the failure of the borrower to use due care in the design, manufacture, construction, repair, modification or improvement of such real or personal property, unless such loss or damage is a result of an act of the lender outside the scope of the activities of a lender of money or unless the lender has been a party to misrepresentations with respect to such real or personal property.

Although the California Supreme Court did not have an opportunity to respond to *Bradler* prior to the legislative action, it later held that a construction lender did not owe a duty of care to a limited partnership doing business with a builder where the lender had relied on information regarding the builder's financial condition from previous business dealings with his company and the builder subsequently declared bankruptcy. *Fox & Carskadon Fin. Corp. v. San Francisco Fed. Sav. & Loan Ass'n,* 52 Cal.App.3d 484, 125 Cal.Rptr. 549, 552 (1975). The court stated that "a strong public policy exists, if our financial institutions are to remain solvent, to prevent a conventional money lender from having to insure every business venture." *Id.*

Other cases decided subsequent to *Connor* have distinguished *Connor* and limited its holding to its particular factual context or have disagreed with its scope. *See, e.g., Skerlac v. Wells Fargo Bank,* 18 Cal. App.3d 1003, 96 Cal.Rptr. 434, 436–37 (1971) (defendant bank did not owe a duty to third parties injured by its car loan borrowers to require car purchasers to carry public liability or property damage insurance when lender had a business relationship with a car dealer to make individual loans to dealer's customers). As a result, the lender liability trend that began with *Connor* in 1968 seems to have largely eroded. "Any modern trend extending the

duties and obligations of a conventional lender that may have surfaced in *Connor,* ... would appear to have again submerged." *Kinner v. World Sav. & Loan Ass'n,* 57 Cal.App.3d 724, 129 Cal.Rptr. 400, 406 (1976); *see also, Meyers v. Guarantee Sav. & Loan Ass'n,* 79 Cal.App.3d 307, 144 Cal.Rptr. 616, 618 (1978) (agency relationship between borrowers and lender of construction monies did not encompass duty on lender's part to inspect ongoing construction for departures from specifications where loan agreement placed duty on borrowers to inspect construction); *Drake v. Morris Plan Co. of California,* 53 Cal. App.3d 208, 125 Cal.Rptr. 667, 669 (1975) (lender's participation in sale of car was so minimal that no legal duty was created to protect plaintiff from purchaser's illegal use of the car).

Cases outside California have also followed more restrictive views of lender liability. In a Pennsylvania case, the superior court refused to recognize an action alleging that the construction lender was a co-developer of a housing project, that it provided substantially all of the money required to build plaintiffs' homes, and that it exercised supervision and control over the design and construction which resulted in defective homes. *Christiansen v. Philcent Corp.,* 226 Pa.Super. 157, 313 A.2d 249, 250 (1973). The case distinguishes the extent of lender involvement found in *Connor* from that in the case before it, noting that *Connor* involved unusual facts and active participation by the lender in the developer's project. *Id.* 313 A.2d at 252.

A Florida appeals court decision held that "a lender owes no duty to others to supervise the construction and development of projects which it has financed." *Armetta v. Clevetrust Realty Investors,* 359 So.2d 540, 543 (Fla.App.1978) (citing *Schaeffer v. Gilmer,* 353 So.2d 847 (Fla. App.1977), *cert. denied,* 366 So.2d 879 (Fla. 1978)). "Absent unusual circumstances,... provisions contained in a loan agreement solely for the protection of the lender do not create a duty on the part of the lender to others." *Armetta,* 359 So.2d at 543. The unusual circumstances scenario the

court describes would be something akin to the lender involvement in *Connor*. The Florida court rejected *Connor* "to the extent that it is interpreted as broadly holding a lender liable to third party purchasers of dwelling units constructed and sold by the developer-borrower." *Id.*

The Kansas Supreme Court limited lender liability in *Dugan v. First Nat'l Bank in Wichita*, 227 Kan. 201, 606 P.2d 1009 (1980). Plaintiff alleged that the construction lender had negligently advanced mortgage proceeds to the builder for purposes other than for new construction, and breached a fiduciary duty to tell her of the consequences of misused funds. The court held that the bank had no legal duty "to supervise the expenditure of the mortgage proceeds, or to see that each dollar was spent for actual construction." *Id.* 606 P.2d at 1015–16. The court also held that there was no fiduciary relationship between plaintiff and the bank which would require it to disclose that construction funds had been misused. *Id.* at 1015.

In Nevada, the supreme court has also narrowly construed the conditions under which construction lenders will be held liable to third parties. In *Davis v. Nevada Nat'l Bank*, 103 Nev. 220, 737 P.2d 503 (1987), a lender was held liable where it was apprised by its borrower of substantial deficiencies in construction, but failed to investigate at all and continued to distribute loan proceeds in complete disregard of the borrower's instruction. *Id.* at 506. The court, however, cautioned those who would interpret the case in anything other than a narrow way:

> Specifically, under usual construction loan terms and conditions, no lender should consider itself at risk if it elects not to generally inspect the progress of the construction of a project financed by the lender. Nor is a lender to consider itself at risk if it volitionally elects to inspect and does so negligently or ineffectively.

*Id.* [1]

In sum, cases following *Connor* have held, with few exceptions, that lender liability for negligence to a party not in privity, will not attach unless there are unusual circumstances that exceed normal lending operations. A lending institution which acts in the normal manner in carrying out its lending activities owes no duty to unrelated parties. *See* Note, *Mortgage Lender Liability to the Purchasers of New or Existing Homes*, 1988 U.Ill.L.Rev. 191, 201 (1988). Further, a normal construction loan contract between a lender and borrower is for the benefit of those parties and does not create a duty to third parties.

The DeBrys' allegations of negligence by Valley Mortgage simply do not meet the required criteria. Assuming that Valley Mortgage knew of code violations and construction defects, that information was obtained in the normal course of its lending activities. The DeBrys characterize the loan agreement between Valley Mortgage and Cascade as imposing "obligations" on Valley Mortgage to inspect, control disbursements, and make sure Cascade had a proper building permit, county approved plans and proper zoning approval. That characterization is inaccurate as those provisions are for the protection of Valley Mortgage, and could be exercised by Valley Mortgage if it chose to do so, but only as against Cascade. Furthermore, the DeBrys' allegation that by paying contractors directly Valley Mortgage "effectively took

---

1. *See also Nymark v. Heart Fed. Sav. & Loan Ass'n*, 231 Cal.App.3d 1089, 283 Cal.Rptr. 53, 56 (1991) ("as a general rule, a financial institution owes no duty of care to a borrower when the institution's involvement in the loan transaction does not exceed the scope of its conventional role as a mere lender of money."); *Shea v. H.S. Pickrell Co.*, 106 N.M. 683, 686, 748 P.2d 980, 983 (App.1987) (no duty to disclose financial condition of customer to another absent special circumstances); *Callaizakis v. Astor Dev. Co.*, 4 Ill.App.3d 163, 280 N.E.2d 512, 516–17 (1972)

(complaint dismissed where complaint did not allege lender received unusual profit from construction loan). *But see Fikes v. First Fed. Sav. & Loan Ass'n of Anchorage*, 533 P.2d 251, 260–61 (Alaska 1975) (lender had a duty of due care to administer construction loan proceeds in a conventional manner where it had knowledge of a prior equitable interest of a third party, and lender had disbursed funds to the builder for expenses relating to other houses being built and charged them against expenses for plaintiff's duplex).

over the project," is actually a conclusion, which we may disregard. *See Christiansen v. Philcent Corp.*, 226 Pa.Super. 157, 313 A.2d 249, 250 (1973); *Bradler v. Craig*, 274 Cal.App.2d 466, 79 Cal.Rptr. 401, 408 (1969). And, again, such practice is merely part of the normal construction lending process. The DeBrys do not allege unusual profits by Valley Mortgage, false representations by Valley Mortgage, nor any sort of collusion with Cascade or others to deceive or mislead. The DeBrys' allegations do not state a cause of action for negligence under the majority of recent lender liability cases, nor under *Connor*, because they do not include allegations of lender involvement exceeding normal lending practice which would create a duty to the DeBrys.

### Fraud

■ The DeBrys' complaint also alleges a cause of action for fraud by concealment against Valley Mortgage, complaining that Valley Mortgage owed a duty to disclose certain information to them prior to their purchase of the building. Fraud "comprises all acts, omissions and concealments involving a breach of legal or equitable duty and resulting damage to another." *Schwartz v. Tanner*, 576 P.2d 873, 875 (Utah 1978). Fraud must be plead with particularity. Utah R.Civ.P. 9(b).

The question of "whether a duty to speak exists is determinable by reference to all the circumstances of the case." *Elder v. Clawson*, 14 Utah 2d 379, 384 P.2d 802, 804 (1963). If those circumstances include a relation of trust or confidence, or inequality of condition, a duty may exist. *Id.* Where "special circumstances" exist between a lender and a third party, courts have found a duty on the lender's part to reveal certain material facts. *See Richfield Bank & Trust Co. v. Sjogren*, 309 Minn. 362, 244 N.W.2d 648, 652 (1976) (bank had actual knowledge of its depositor's fraudulent activities); *Jeminson v. Montgomery Real Estate & Co.*, 47 Mich. App. 731, 210 N.W.2d 10, 15 (1973) (Adams, J. dissenting) (lender knew of real estate sales company's "reputation for using unscrupulous and deceptive practices") (ap-

proved in 396 Mich. 106, 240 N.W.2d 205, 206 (1976)); *R.A. Peck, Inc. v. Liberty Fed. Sav. Bank*, 108 N.M. 84, 89–90, 766 P.2d 928, 933–34 (App.1988) (lender instructed contractor to submit pay requests directly to it, knowing there were no funds to pay because they had been expended on other projects of builder).

A duty to speak "will not be found where the parties deal at arm's length, and where the underlying facts are reasonably within the knowledge of both parties. Under such circumstances, the plaintiff is obliged to take reasonable steps to inform himself, and to protect his own interests." *Sugarhouse Fin. v. Anderson*, 610 P.2d 1369, 1373 (Utah 1980) (citations omitted). A duty to speak will be found from " 'all the circumstances of the case and by comparing the facts not disclosed with the object and end in view by the contracting parties.' " *Elder*, 384 P.2d at 804 (quoting from 23 Am.Jur. 856 Fraud and Deceit, IV Concealment § 78). The false representations or omissions must be knowing or reckless to constitute fraud. *Schwartz*, 576 P.2d at 875.

Under the facts as alleged by the DeBrys, there was not a duty to speak under a fraud theory. There are no special circumstances alleged which create such a duty. The DeBrys do not claim Valley Mortgage made false representations, only that it failed to disclose information to them about the building which it knew or should have known. There is nothing in the pleadings to indicate Valley Mortgage was in a better position than were the DeBrys, to have access to the relevant information, or that precluded the DeBrys from seeking the information. As purchasers of commercial property, the DeBrys could make inquiries themselves. The alleged facts, viewed most favorably to the DeBrys, do not state a cause of action for fraud.

### Negligent Misrepresentation

■ The DeBrys also charge Valley Mortgage with negligent misrepresentation. They allege that Valley Mortgage's

failure to disclose construction defects and code violations, and its closing on the building sale transaction, constituted an implied representation that the building was nearly completed, and could be completed. Similarly, DeBrys allege that when Valley Mortgage made a construction loan to Cascade, it impliedly represented that Cascade was a licensed contractor and that the building was constructed in accordance with county building codes. Essentially, the DeBrys argue that there were implied misrepresentations which caused them damage.

Negligent misrepresentation is defined as follows:

> Where (1) one having a pecuniary interest in a transaction, (2) is in a superior position to know material facts, and (3) carelessly or negligently makes a false representation concerning them, (4) expecting the other party to rely and act thereon, and (5) the other party reasonably does so and (6) suffers loss in that transaction, the representor can be held responsible if the other elements of fraud are also present.

*Jardine v. Brunswick Corp.*, 18 Utah 2d 378, 381, 423 P.2d 659, 662 (1967).

The DeBrys cite numerous cases to illustrate relationships that give rise to a duty under a negligent misrepresentation theory. None of these cases, however, involve an *implied* misrepresentation, as the DeBrys alleged in their complaint. Nor has our own research revealed any cases directly on point. In *Jardine v. Brunswick Corp.*, 18 Utah 2d 378, 423 P.2d at 661 n. 1 (1967), the Utah Supreme Court noted that negligent misrepresentation occurs where the "the representor makes an *affirmative* assertion which is false without having used reasonable diligence or competence in ascertaining the veracity of the assertion." (quoting *Ellis v. Hale*, 13 Utah 2d 279, 373 P.2d 382 (1962) (emphasis added)). The court also cited Restatement (Second), Torts § 552 and particularly comments a, i and j. *Id.* Section 552 defines negligent misrepresentation as occurring where "one who, in the course of his business,... supplies false information for guidance of oth-

ers in their business transactions, ... [and where] liability ... is limited to loss suffered (a) by the person or one of a limited group of persons for whose benefit and guidance he intends to supply the information...." If Valley Mortgage owes no duty to disclose information to the DeBrys under either a fraud or negligence theory, it seems axiomatic that there can be no duty under a negligent misrepresentation theory where the misrepresentations are claimed to be implied from actions taken in the normal course of construction lending. The DeBrys are not in the class of persons who would be given information by Valley Mortgage in the normal course of their respective enterprises. Therefore, Valley Mortgage owes no duty to them under a negligent misrepresentation theory under the circumstance described in the complaint.

## LEAVE TO AMEND

■ The DeBrys claim the trial court should have allowed additional time for discovery and further amendment of their complaint, rather than dismissing the complaint with prejudice.

The original complaint in this case was filed on January 24, 1986, and was amended to include Valley Mortgage on April 16, 1986. The DeBrys thereafter subpoenaed Valley Mortgage's records and took the deposition of Valley Mortgage's custodian of records on March 31, 1989. After the earlier appeal, the DeBrys filed their fourth amended complaint on August 31, 1989. The DeBrys filed a deposition notice on January 30, 1990, and were able to complete this deposition prior to the hearing on the motion to dismiss held March 21, 1990. The DeBrys have not specifically identified persons to be deposed or other additional discovery that needs to take place in order for them to be fully apprised of Valley Mortgage's activities.

We will not disturb a trial court's disposition on a motion to amend pleadings absent an abuse of discretion. *Chadwick v. Nielsen*, 763 P.2d 817, 820 (Utah App.1988). The trial court should consider such motion "in light of all the circumstances and grant

or deny it in the interest of fairness and substantial justice." *Girard v. Appleby,* 660 P.2d 245, 247 (Utah 1983). While the law favors allowing amendment prior to trial, in this instance we find no abuse of discretion. The DeBrys have had two opportunities to adequately plead a cause of action against Valley Mortgage and have failed to do so. They have also had a reasonable opportunity to conduct discovery to ascertain a factual basis for proper pleading, but have not identified any such factual basis or a source for further substantiation. As stated in this court's earlier opinion, "DeBry and their counsel are [not] free to make Valley Mortgage a defendant and hope to turn up a claim against them in the course of discovery." There needs to be an end to the time and expense imposed on Valley Mortgage as a defendant in the DeBrys' fishing expedition. We therefore conclude the court did not abuse its discretion in denying leave to further amend the complaint.

## RULE 33 DAMAGES

Valley Mortgage has requested an award of damages under Utah Rule of Appellate Procedure 33, on the basis that the DeBrys' appeal is frivolous. While we have not been persuaded by the DeBrys' arguments on appeal, we find that the appeal nevertheless, is not frivolous such as to warrant an award of damages under Rule 33.

## CONCLUSION

The opinion of this court in the prior appeal of the trial court's order of dismissal reversing on the basis that the DeBrys should have an opportunity to amend their complaint, does not constitute law of the case in its reference to *Connor v. Great W. Sav. & Loan Ass'n,* 69 Cal.2d 850, 73 Cal. Rptr. 369, 447 P.2d 609 (1968) nor does it mandate allowing further amendment of pleadings on this appeal. The trial court did not err in granting Valley Mortgage's Rule 12(b)(6) motion to dismiss the DeBrys' complaint. The complaint fails to state a claim against Valley Mortgage. We de-

cline to award damages under Rule 33. Costs awarded to Valley Mortgage.

Affirmed.

GARFF and RUSSON, JJ., concur.