Filed 7/31/14  Cato v. HSBC Bank USA CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(El Dorado)

----

| | |
|---|---|
| JEROME CATO, | |
| Plaintiff and Appellant, | C072623 |
| v. | (Super. Ct. No. PC20110016) |
| HSBC BANK, USA, as Trustee, etc., et al., | |
| Defendants and Respondents. | |

Plaintiff Jerome Cato lost his house through foreclosure after he became unable to make payments on his mortgage.  Cato received the mortgage loan from lender, PRO30 Funding, with the help of Sue Stevens, an employee of Interstate Mortgage.  Facing foreclosure, Cato sued for deceit, negligence, breach of fiduciary duty, violations of the Unfair Competition Law (UCL) (Bus. & Prof. Code, § 17200 et seq.), and wrongful foreclosure.  In addition to suing the parties originally involved in making the loan, Cato named as defendants the assignees and successors of the mortgage:  HSBC Bank, USA (HSBC), Mortgage Electronic Registration Systems, Inc. (MERS), Everhome Mortgage Company (Everhome Mortgage Co.), and Regional Service Corporation (Regional Service Corp.) (collectively, the successor defendants).  Cato's first amended complaint does not allege the successor defendants acted wrongfully in dealing with him, but that

1

they assumed derivative liability through the mortgage's assignment. The successor defendants filed a demurrer, which the trial court sustained without leave to amend.

On appeal, Cato contends: (1) HSBC is liable for deceit as successor to and assignee of the mortgage from PRO30 Funding, (2) the successor and assignee theories also render HSBC liable for negligence, (3) he sufficiently pled his ability to tender amounts due in order to state a cause of action for wrongful foreclosure, and (4) the same theories of derivative liability support a cause of action under the UCL.[1]

We conclude Cato has abandoned his claims against all successor defendants except HSBC. As to HSBC, its demurrer was properly sustained because it did not assume tort liability merely by purchasing limited rights to the mortgage on the secondary market. Finally, Cato's operative complaint failed to adequately allege his ability to tender amounts due in order to state a claim for wrongful foreclosure. Accordingly, we affirm the judgment.

FACTUAL AND PROCEDURAL HISTORY

***First Amended Complaint and Demurrers by the Successor Defendants***

Cato's first amended complaint alleges he sought a mortgage to buy a house in August 2005. In seeking a mortgage, Cato worked with Sue Stevens, an employee of Interstate Mortgage. Stevens filled out the paperwork for the mortgage, and in doing so overstated Cato's income. Stevens also told Cato a variable-rate mortgage was his only option. However, she assured Cato he could refinance if interest rates increased. She also told him the loan would become more affordable as his income increased. In assisting Cato, Stevens failed to disclose she and Interstate Mortgage were getting "kickback payments" from PRO30 Funding. Stevens was able to secure for Cato a 30-year option adjustable rate mortgage loan for the purchase of the residence. Stevens

---

[1]  Cato does not challenge the dismissal of his cause of action for breach of fiduciary duty.

2

rushed Cato through the mortgage documentation signing, and thus Cato did not read the documents he signed.

When Cato attempted to refinance the loan in 2009, he learned Stevens had overstated his income on the original loan application. Cato was unable to make payments on the loan and lost his house through foreclosure.[2]

### *Order Sustaining the Demurrers without Leave to Amend*

The trial court sustained the successor defendants' demurrer without leave to amend. In doing so, the trial court explained that "[t]he 1st amended complaint contains no allegations that any agents or employees of defendants HSBC, MERS, Everhome Mortgage Co. and/or Regional Service Corp. made any fraudulent misrepresentations. In fact, there are no allegations in the 1st amended complaint whatsoever that MERS, Everhome Mortgage Co. and/or Regional Service Corp. are liable to plaintiff for the alleged fraudulent misrepresentations and omissions allegedly made at the time of the initial loan transaction involving defendants Interstate Mortgage, the alleged mortgage broker, and PRO30 Funding . . . , the original lender. The only allegations of involvement asserted against defendant HSBC are: 'Defendant HSBC BANK USA as trustee for OMAC2005-5 are liable for the acts and conduct (fraud and negligence) described below that was committed by INTERSTATE and in which PRO30 is liable as the principal they are successor and/or assignee to PRO30 of the subject loan. . . .' (1st Amended Complaint, paragraph 23.) Paragraph 23 further alleges that HSBC is liable for the fraud and negligence because of the successor and assignee liability law; due to assumption of the rights of the loan, it also assumed the liabilities; and assuming the loan without assuming the liabilities is contrary to public policy."

---

[2]    The appellate record shows the trustee's sale of Cato's house was scheduled for December 23, 2009. Successor respondents inform us the house was actually sold to HSBC. Cato does not dispute the fact of the sale.

3

The trial court rejected Cato's assertion of derivative liability for the successor defendants by reasoning: "While the assignee of a deed of trust generally takes his or her rights and remedies to enforce the deed of trust subject to any defenses the obligor has against the assignor, it does not follow that merely by virtue of assignment the assignee becomes directly liable in tort for damages arising from the alleged negligent and/or fraudulent conduct of the assignor of the deed of trust. The assignee is only subject to the defenses to enforcement."

From a judgment dismissing the successor defendants, Cato has timely appealed.

DISCUSSION

**I**

***Standard of Review***

A demurrer tests the sufficiency of the complaint by determining whether the plaintiff has stated legally viable causes of action. On appeal from a judgment of dismissal after the sustaining of a demurrer, we give the complaint a reasonable interpretation and read it as a whole with its parts considered in their context. (*Aragon-Haas v. Family Security Ins. Services, Inc.* (1991) 231 Cal.App.3d 232, 238.) A general demurrer admits the truth of all material factual allegations. (*Ibid.*) Our review is not concerned with plaintiff's ability to prove the allegations or with any possible difficulties in making such proof. (*Ibid.*) We are not bound by the construction placed by the trial court on the pleadings; instead, we make our own independent judgment. (*Ibid.*)

When the trial court sustains the demurrer without leave to amend, we must decide whether there is a reasonable possibility the plaintiff can cure the defect with an amendment. If we find an amendment could cure the defect, we must reverse. The plaintiff bears the burden of proving an amendment would cure the defect. (*Gomes v. Countrywide Home Loans, Inc*. (2011) 192 Cal.App.4th 1149, 1153.)

4

## II

### *Sustaining of the Demurrer as to MERS, Everhome Mortgage Co., and Regional Service Corp.*

Our review of Cato's opening brief reveals he challenges the sustaining of the demurrer only as to HSBC. As to the cause of action for deceit, Cato notes he named only defendants Interstate Mortgage, PRO30, and HSBC. Thus, he expressly excludes MERS, Everhome Mortgage Co., and Regional Service Corp. from liability for deceit.

Cato's first amended complaint also failed to name MERS, Everhome Mortgage Co., and Regional Service Corp. as defendants for the negligence cause of action. On appeal, Cato asserts demurrer should not have been sustained as to all "respondents" but advances no argument regarding negligence as to MERS, Everhome Mortgage Co., and Regional Service Corp. Cato's argument on the negligence cause of action focuses exclusively on HSBC's liability. Thus, Cato has abandoned any claim he might have as to MERS, Everhome Mortgage Co., and Regional Service Corp. for negligence. (*Buller v. Sutter Health* (2008) 160 Cal.App.4th 981, 984, fn. 1 ["failure to discuss cause of action on appeal from trial court's order sustaining demurrer constitutes abandonment of that cause of action on appeal"].)

Cato's opening brief also makes no mention of MERS, Everhome Mortgage Co., or Regional Service Corp. in his arguments regarding the causes of action arising under the UCL or for wrongful foreclosure. His failure to discuss how the trial court might have erred as to these defendants abandons any argument as to these claims. "To demonstrate error, appellant must present meaningful legal analysis supported by citations to authority and citations to facts in the record that support the claim of error. (*City of Lincoln v. Barringer* (2002) 102 Cal.App.4th 1211, 1239, fn. 16; *In re Marriage of Nichols* (1994) 27 Cal.App.4th 661, 672-673, fn. 3.) When a point is asserted without argument and authority for the proposition, 'it is deemed to be without foundation and

requires no discussion by the reviewing court.'  (*Atchley v. City of Fresno* [(1984)] 151 Cal.App.3d [635,] 647.)"  (*In re S.C.* (2006) 138 Cal.App.4th 396, 408.)

In sum, Cato has abandoned any claim that the trial court erred in dismissing MERS, Everhome Mortgage Co., or Regional Service Corp. as defendants.

### III

### *Assignee and Successor Liability of HSBC*

Cato contends HSBC is liable for deceit and negligence -– not for any of its own conduct -– but based solely on the receipt of the mortgage from PRO30 Funding.  We are not persuaded.

### A.

### *Cato's Theory of Liability against HSBC*

Although we deem Cato's claims against MERS to be abandoned, his allegations regarding MERS's involvement sheds light on the nature of the assignment to HSBC. Cato's operative complaint alleges MERS "was identified as the beneficiary of the Deed of Trust" for Cato's mortgage.  He further alleges "MERS was, and is now, a confidential computer registry used by MERS 'members,' which are primarily lenders to list and trade mortgage loans on the secondary market while avoiding the legal fees and requisites of recording conveyances of said loans and Deeds of Trust."

Cato's allegations echo the explanation set forth in *Fontenot v. Wells Fargo Bank, N.A.* (2011) 198 Cal.App.4th 256.  *Fontenot* explains that "the 'MERS System,' [is] a method devised by the mortgage banking industry to facilitate the securitization of real property debt instruments.  As described in *Mortgage Electronic Registration Systems v. Nebraska Dept. of Banking & Finance* (2005) 270 Neb. 529, 704 N.W.2d 784, MERS is a private corporation that administers a national registry of real estate debt interest transactions.  Members of the MERS System assign limited interests in the real property to MERS, which is listed as a grantee in the official records of local governments, but the

6

members retain the promissory notes and mortgage servicing rights. The notes may thereafter be transferred among members without requiring recordation in the public records. (*Id*. at p. 785.)" (*Fontenot*, at p. 267.) Thus, the MERS system of assignment means mortgages can be traded on the secondary market because of the retention of only limited rights such as mortgage servicing and the ability to foreclose for failure to make agreed-upon payments. (*Ibid.*)

Consistent with this alleged involvement of MERS in facilitating transferability of Cato's mortgage, Cato alleged HSBC acquired tort liability solely by receiving rights to his mortgage. His operative complaint alleges HSBC is "liable for the acts and conduct (fraud and negligence) described below that was committed by INTERSTATE and in which PRO30 is liable as the principal they are the successor and/or assignee to PRO30 of the subject loan. By acquiring the loan HSBC is liable for all of the underlying acts and conduct of PRO30 (as acquired by the principal/agency relationship) because of 1) successor and assignee liability law, 2) in assuming the rights thereto . . . they specifically assumed any debts and liabilities and 3) assuming the loan without assuming the liabilities is contrary to public policy and is unconscionable particularly because HSBC was aware of the negligent and fraudulent conduct associated with the subject and this type of loan as described below and with knowledge, notification, consent, and ratification of each other."

Cato's first amended complaint does not allege any agents or employees of HSBC made any fraudulent misrepresentations or had actual knowledge *Cato's loan* was tortiously procured. Thus, Cato's operative complaint states valid tort claims against HSBC only if tort liability runs with the limited rights received under the MERS system.

## B.

### *Assignee and Successor Liability*

"Lenders and borrowers operate at arm's length.  (*Oaks Management Corporation v. Superior Court* (2006) 145 Cal.App.4th 453, 466; *Union Bank v. Superior Court* (1995) 31 Cal.App.4th 573, 579; *Price v. Wells Fargo Bank* (1989) 213 Cal.App.3d 465, 476, disapproved on other grounds in *Riverisland Cold Storage, Inc. v. Fresno–Madera Production Credit Assn.* (2013) 55 Cal.4th 1169, 1182.)  '[A]s a general rule, a financial institution owes no duty of care to a borrower when the institution's involvement in the loan transaction does not exceed the scope of its conventional role as a mere lender of money.'  (*Nymark v. Heart Fed. Savings & Loan Assn.* (1991) 231 Cal.App.3d 1089, 1096 (*Nymark* ).)

"In *Nymark, supra*, 231 Cal.App.3d at page 1092, the court held a lender owed no duty of care to a borrower in preparing an appraisal of the real property security for the loan when the purpose of the appraisal is to protect the lender by satisfying it that the collateral provided adequate security for the loan.  The court reached this holding by considering the six factors identified in *Biakanja v. Irving* (1958) 49 Cal.2d 647 (*Biakanja*) to determine whether to recognize a duty of care.  (*Nymark, supra*, at p. 1098.)  Those factors are (1) the extent to which the transaction was intended to affect the plaintiff, (2) the foreseeability of harm to the plaintiff, (3) the degree of certainty that the plaintiff suffered injury, (4) the closeness of the connection between the defendant's conduct and the injury suffered, (5) the moral blame attached to the defendant's conduct, and (6) the policy of preventing future harm.  (*Ibid.*)"  (*Lueras v. BAC Home Loans Servicing, LP* (2013) 21 Cal.App.4th 49, 63.)

Here, the factors identified in *Biakanja v. Irving* (1958) 49 Cal.2d 647 (*Biakanja*) do not support an imposition of tort liability on HSBC for its receipt of limited rights under the assignment from PRO30 through the MERS system.  First, the assignment of

the mortgage was not intended to benefit Cato. Instead, the assignment was part of the trading of mortgage service rights and other limited rights on the secondary market created for lenders. Second, the assignment of the mortgage was not the cause of the harm to Cato. Nothing HSBC did caused Cato harm because HSBC assumed the limited mortgage rights after Stevens and Interstate Mortgage allegedly committed the torts. Third, the degree of certainty that Cato suffered injury cannot be ascertained on demurrer. If true, Cato's allegations might establish Stevens and Interstate Mortgage acted wrongfully. Conversely, Cato's admitted failure to read any of the documents he signed might reduce their share of fault. Fourth, there is no connection between HSBC's conduct and the alleged injury suffered. Cato's entire theory of derivative liability is premised on the fact he cannot allege anything that any employee of HSBC did to harm him. Fifth, no moral blame attaches to HSBC's purchase of limited mortgage rights on a secondary market. Any other bank participating in the secondary market might just as well have bought the particular mortgage at issue in this case. It is a mere fortuity that HSBC was the purchaser of the limited rights to this mortgage. Sixth, the policy of preventing future harm has little applicability to a bank that played no role in making the allegedly wrongful loan. With the exception of the third prong of the test that we determine to be neutral in this case, the considerations set forth under *Biakanja, supra,* 49 Cal.2d 647 weigh against the imposition of liability on HSBC.

Cato contends we should conclude HSBC acquired tort liability for the original loan by following *Jolley v. Chase Home Finance, LLC* (2013) 213 Cal.App.4th 872 (*Jolley*). We reject the contention because *Jolley* presents a much different situation than this case. *Jolley* involved an action by the borrower, Scott Jolley, against the assignee of the construction loan, namely, the bank of JP Morgan Chase (Chase). (*Id.* at p. 877.) Although the construction loan had originally been made between Jolley and Washington Mutual Bank (WaMu), Chase acquired the loan when it purchased the bulk of WaMu

9

after WaMu fell into federal receivership during the financial crisis.  (*Ibid.*)  The trial court granted Chase's motion for summary judgment on grounds Chase had not assumed the liabilities of WaMu through the purchase and assumption agreement that facilitated the purchase of WaMu.  (*Ibid.*)  The Court of Appeal reversed.  (*Id*. at pp. 877–878.)

Although the *Jolley* court acknowledged a financial institution does not ordinarily owe a duty of care to a borrower when acting in the traditional role as a lender of money, the unique circumstances of that case compelled an exception to the rule.  (213 Cal.App.4th at p. 898.)  Chase had not merely purchased rights to the loan, but acquired the very bank that made and continued to hold the loan.  (*Ibid.*)  *Jolley* involved "a construction loan, not a residential home loan where, save for possible loan servicing issues, the relationship ends when the loan is funded.  By contrast, in a construction loan the relationship between lender and borrower is ongoing, in the sense that the parties are working together over a period of time, with disbursements made throughout the construction period, depending upon the state of progress towards completion."  (*Id.* at p. 901.)  Thus, the ongoing nature of the relationship between the borrower and the bank that purchased the original lender supported the conclusion Chase assumed potential tort liability when it purchased WaMu and its loan portfolio.  (*Ibid.*)

Unlike *Jolley, supra*, 213 Cal.App.4th 872, this case does not involve a continuing relationship between borrower and the lender who is accused of acting tortiously.  This case also does not involve assumption of an entire bank along with its loan portfolio.  In *Jolley*, the Court of Appeal acknowledged the need to engage in "the balancing of the '*Biakanja* factors' " to determine whether an assignment of a loan includes tort liability incurred by the lender.  (*Ibid.,* quoting *Newson v. Countrywide Home Loans, Inc*. (N.D. Cal. Nov. 30, 2010 No. C 09–5288) 2010 LEXIS 126383; WL 4939795, at p. *5.)  Although the *Biakanja* test might compel tort liability to discourage a lender from

10

wrongful conduct in an ongoing relationship, imposition of tort liability on HSBC would punish an otherwise innocent purchaser of limited rights to a mortgage.

As a separate basis for our conclusion HSBC did not acquire tort liability when it purchased limited rights to Cato's loan, we accept Cato's own allegation HSBC never acquired any rights to his mortgage. Cato's operative complaint claims that "no interest in the Promissory Note, Deed of Trust, or the Subject Property was ever legally transferred to HSBC." Thus, Cato denies HSBC is "without legal standing to assert any legal rights with respect to the Note and Deed of Trust." A demurrer admits all material facts properly pleaded. (*City of Atascadero v. Merrill Lynch, Pierce, Fenner & Smith, Inc*. (1998) 68 Cal.App.4th 445, 459.) Accepting Cato's pleaded facts leads to the conclusion HSBC did not acquire tort liability because it did not acquire any rights to the mortgage. Thus, both Cato's assignee and successor-in-interest theories of liability are negated by the facts as pled in the operative complaint.

We conclude Cato has not stated any viable claim against HSBC for deceit or negligence. Nor can Cato amend his complaint to resurrect his tort theories against HSBC because his action against HSBC depends entirely on the lender's derivative liability. In short, HSBC did not assume tort liability when it purchased limited rights to Cato's loan on the secondary market.

## IV

### *Wrongful Foreclosure*

Cato contends the trial court erred in dismissing his wrongful foreclosure cause of action on grounds he inadequately pled his ability to tender amounts due. We reject the contention.

11

## A.

### *Cato's Allegation Regarding Ability to Tender*

In its entirety, Cato's operative complaint alleges the following about his ability to tender: "Plaintiff offers to unconditionally tender all amounts due in full satisfaction of any tender requirements under law."

The trial court sustained the demurrers as to this cause of action, and explained: "There are no allegations of fact establishing an ability to tender the amount due and owing under the loan. As a bare minimum, a plaintiff is required to allege facts supporting any representation that the plaintiff has the ability to tender. A conclusory allegation that a plaintiff has the ability to tender, without more, will not suffice. Instead, plaintiff must set forth factual allegations demonstrating he or she has the resources, or may readily obtain them, to be in a position to tender the loan proceeds."

## B.

### *The Claim of Ability to Tender Was Inadequate*

A proper offer to tender amounts due is a prerequisite for a wrongful foreclosure cause of action. (*Abdallah v. United Savings Bank* (1996) 43 Cal.App.4th 1101, 1109; *Arnolds Management Corp. v. Eischen* (1984) 158 Cal.App.3d 575, 578 (*Arnolds Management*).) Plaintiffs do not meet their burden merely pleading "a 'willingness' or 'preparedness' to tender," if they do not also plead "facts that would establish their ability to tender." (*Briosos v. Wells Fargo Bank* (N.D. Cal. 2010) 737 F.Supp.2d 1018, 1028.) Thus, plaintiffs must allege facts that "establish either their present ability to tender the loan proceeds or the expectation that they will be able to tender." (*Ibid.*) A conclusory allegation of ability to tender, without more, fails to suffice. (*Id.* at p. 1029.)

Here, the trial court correctly determined Cato's conclusory assertion of willingness to tender failed to adequately plead a cause of action for wrongful foreclosure. No ability to secure a substitute loan or pay all past due amounts is alleged

12

to support Cato's conclusion. Thus, the demurrer was properly sustained as to this cause of action.

Cato does not appear to contest the inadequacy of his pleading. Instead, he seeks to excuse his lack of a proper tender allegation by invoking exceptions to the tender rule. He asserts there are four exceptions to the tender rule, but only argues a tender offer is inequitable in this case, he is due a set-off, and the trustee's deed is void on its face. His operative complaint, however, does not plead any of these exceptions to the tender requirement. Instead, the operative complaint's sole theory for wrongful foreclosure rests on Cato's allegation that the assignment of his mortgage was void because "MERS did not have authority from the original lender or the current assignee of the lender to assign the Deed of Trust or Note to HSBC." This is precisely the sort of theory for wrongful foreclosure for which a proper tender allegation is required because "[i]t is settled that an action to set aside a trustee's sale for irregularities in sale notice or procedure should be accompanied by an offer to pay the full amount of the debt for which the property was security." (*Arnolds Management*, *supra*, 158 Cal.App.3d at p. 578.)

As the *Arnolds Management* court explained, "[t]his rule is premised upon the equitable maxim that a court of equity will not order that a useless act be performed. 'Equity will not interpose its remedial power in the accomplishment of what seemingly would be nothing but an idly and expensively futile act, nor will it purposely speculate in a field where there has been no proof as to what beneficial purpose may be subserved through its intervention.' (*Leonard v. Bank of America etc. Ass'n* (1936) 16 Cal.App.2d 341, 344.)" (*Arnolds Management*, *supra,* 158 Cal.App.3d at pp. 578-579.) Based on these equitable considerations, we reject Cato's contention that the tender rule is inequitable.

Cato also asserts he is entitled to an offset that renders the trial court's rejection of offset error. However, he does not develop an argument to explain the nature and extent

of the offset. His verbatim quotation of pages from his first amended complaint is unhelpful and does not constitute the requisite analysis. Accordingly, his argument regarding the offset exception to the tender rule is deemed forfeited. (*In re S.C., supra,* 138 Cal.App.4th at pp. 409-410 [holding appellant's failure to present legal analysis for a claim of error forfeits the issue].)

We reject Cato's argument that he is excused from the tender requirement because he now asserts the deed is "void on its face." Cato offers no analysis as to whether his challenge to the deed arises from an attack on the face of the deed of trust or from an equitable action to set aside a voidable deed. (But see *Dimock v. Emerald Properties LLC* (2000) 81 Cal.App.4th 868, 878 [distinguishing between action based on a deed void on its face and request in equity to set aside a voidable deed for purposes of whether tender is required].) However, an examination of his pleading indicates he is not attacking the face of the deed but challenging the lack of authority of MERS to transfer the deed of trust to HSBC. Thus, Cato's action sounds in equity and thus requires he "do equity" by pleading an adequate offer to tender the owed amounts on the mortgage. (*Arnolds Management*, *supra*, 158 Cal.App.3d at pp. 578-579.)

The trial court properly sustained the demurrer based on Cato's conclusory allegation regarding his ability to tender amounts due on his mortgage.

## V

### *UCL Claim against HSBC*

Cato contends HSBC is liable under the UCL to the extent HSBC is liable for deceit, negligence, and wrongful foreclosure. Having rejected these claims of liability against HSBC, we also reject his claim under Business and Professions Code section 17200. An unfair practices claim under section 17200 cannot be predicated on vicarious liability. (*Emery v. Visa Internat. Service Ass'n*. (2002) 95 Cal.App.4th 952, 960.) " 'The concept of vicarious liability has no application to actions brought under the unfair

14

business practices act.' (*People v. Toomey* (1984) 157 Cal.App.3d 1, 14 (*Toomey*).) A defendant's liability must be based on his [or her] personal 'participation in the unlawful practices' and 'unbridled control' over the practices that are found to violate section 17200 or 17500 [of the Business and Professions Code]. (*Toomey, supra*, 157 Cal.App.3d at p. 15.)" (*Emery v. Visa Internat. Service Ass'n.* at p. 960.) Accordingly, Cato's lack of viable tort claims against HSBC also undermines his UCL claim premised on the same tort claims.

## DISPOSITION

The judgment is affirmed. Respondents HSBC Bank, USA, Mortgage Electronic Registration Systems, Inc., Everhome Mortgage Company, and Regional Service Corporation shall recover costs on appeal. (Cal. Rules of Court, rule 8.278(a)(1) & (2).)


                                    HOCH        , J.



We concur:



    RAYE      , P. J.



    BLEASE    , J.



15